FLATONIA STATE BANK (GOLDIE COCKRILL ET AL.,) V. SOUTHWESTERN LIFE INSURANCE COMPANY.

No. 7269. Decided April 19, 1939.
Rehearing overruled May 31, 1939.
(127 S. W., 2d Series 188; 128 S. W., 2d Series 790.)

244

*E. A. Arnin, Jr.,* of Flatonia, and *Eskridge & Groce,* of San Antonio, for plaintiff in error Flatonia State Bank, *W. B. Green, Edw. H. Moss* and *Moss & Moss,* of La Grange, for plaintiff in error, Goldie Cockrill.

It was error for the court to conclude that the life insurance company had a right to discharge said policy by paying the cash surrender value to the bank, prior to the death of Cockrill, less the indebtedness due the insurance company. Cornell v. Mutual Life Ins. Co., 165 S. W. 862; Cawthon v. Perry, 76 Texas 383, 13 S. W. 268; Emery v. Manhattan Life Ins. Co. 200 S. W. 19; Bigham v. Talbot, 63 Texas 271; Farracy v. Perry, 12 S. W. (2d) 651; Wofford v. Unger, 55 Texas 480.

*Hamilton, Lipscomb, Wood & Swift,* of Dallas, for defendant in error.

The right to surrender is not personal to the insured, unless so stipulated and may be exercised by an assignee if notice of intention so to do is given by him to the insured. Wilson v. Prudential Ins. Co., 123 Pa. Superior Court, 364, 187 Atl. 251; Mutual Ben. Life Ins. Co. v. First Natl. Bank, 160 Ky. 538, 169 S. W. 1028.

MR. JUDGE HICKMAN delivered the opinion of the Commission of Appeals, Section A.

There are three parties to this suit, Southwestern Life Insurance Company, hereinafter called the Insurance Company, Flatonia State Bank, hereinafter called the Bank, and Mrs. Goldie Cockrill, widow of E. E. Cockrill, deceased. At the beginning of the transactions leading up to this litigation these parties sustained the following relations to each other: E. E. Cockrill was the owner of a policy of life insurance issued by the Insurance Company upon his life in which his wife, Mrs. Goldie Cockrill, was named as beneficiary. In 1925 this policy was converted into a fully paid up policy having a maturity value of $10,010.00 with a cash surrender value in accordance with the schedules set out therein. On January 15, 1924, Cock-

rill executed his note to the Insurance Company for borrowed money in the sum of $3930.00 and assigned and delivered the policy to it as security therefor. On the same date he executed an assignment of the policy to the Bank as security for a note executed by him to it for $5500.00. This latter assignment was made expressly subject to the prior rights of the Insurance Company. The note to the Bank was renewed on March 4, 1927, the renewal note being due on March 4, 1930. Upon the execution of this renewal note Cockrill made an additional assignment of the policy to the Bank in the identical terms of the prior assignment. On March 2, 1934, two days before the note to the Bank would have become barred by limitation, the Bank filed suit thereon naming Mr. and Mrs. Cockrill and the Insurance Company as defendants. As against Cockrill the relief sought was a personal judgment for the principal, interest and attorney's fees due upon the note. As against Mrs. Cockrill no personal judgment was sought, but she was made a party because she had joined her husband in the assignment of the policy to the Bank and was the beneficiary therein. As against the Insurance Company no particular relief seems to have been sought; the petition alleging that it was claiming a prior lien on the policy, which claim was denied. The prayer was that a personal judgment be rendered against Cockrill on the note, and that upon final hearing the Bank's rights as against the other defendants be finally adjudicated and appropriate relief awarded.

At the institution of the suit Cockrill was seriously ill in a hospital in San Antonio, but he and his wife were later served with a citation. The Insurance Company was not served. On April 13, 1934, about six weeks after the suit was filed, E. A. Arnim, Jr., attorney of record for the Bank, addressed a letter to the Insurance Company enclosing a certified copy of the Bank's original petition and requesting the Insurance Company to execute a waiver of service for the term of the district court of Fayette County which was to begin on April 30, 1934. This letter informed the Insurance Company that the Bank would not contest the priority of the assignment to it. It also contained the information that the primary object of the suit was to prevent limitation from barring the cause of action of the Bank against Cockrill, and that of secondary interest was the wish of the Bank to bring about a liquidation of any equities it might have in the policy. This letter is set out in full in the opinion of the Court of Civil Appeals. On May 2, 1934, the Insurance Company filed its original answer and action of interpleader in which it set up the assignment

made by Cockrill and wife to it as security for a loan on the policy evidenced by the note above mentioned, alleged that the amount then due and unpaid on the note was $5651.18, and that on April 30, 1934, the date of the commencement of that term of court, the cash surrender value of the policy over and above the indebtedness owing to it was $874.82. This pleading recognized the assignment of the policy to the Bank subject to the prior rights of the Insurance Company, but alleged that the Insurance Company was unable to determine with safety to itself whether the cash surrender value of the policy was subject to said assignment, since the rights of the parties involved a matter of fact and of law which it could not determine. This pleading tendered the sum of $874.82, the then cash surrender value of the policy after deducting the amount due the Insurance Company, in order that the court might determine who was entitled to receive same; it alleged the necessity of employing attorneys and prayed for $200.00 as reasonable attorney's fees and $50.00 as additional expenses which it would incur. The prayer was for citation upon the Cockrills, for the court to determine upon final hearing who was entitled to receive the sum of $874.82 which it had deposited in the registry of the court, for a recovery of its attorney's fees, expenses and costs out of that sum and for general relief.

On July 22, 1934, Cockrill died intestate. Mrs. Cockrill and the Bank each then called upon the Insurance Company to pay the maturity value of the policy, $10,010.00, less the indebtedness of Cockrill to it and upon a refusal to do so each filed suit upon the policy, the Bank by amending its original petition. The two suits thus pending were consolidated and by order of the court the parties recast their pleadings. In the consolidated suit the contentions of the respective parties were as follows: The Insurance Company sought the discharge of, and release from liability on the policy on account of its tender theretofore made, and prayed for attorney's fees and expenses. The Bank sought recovery on the policy to the amount of the indebtedness owing on the note executed to it by Cockrill, and Mrs. Cockrill, while joining with the bank in the claim that the recovery should be for the full maturity value of the policy rather than its cash surrender value, contended, as against the Bank, that she, and not the Bank, was entitled to receive the proceeds of the policy, less the prior claim of the Insurance Company. The contentions, as between her and the Bank, will be more specifically stated later in this opinion.

In the trial before the court without a jury the theory of

the Insurance Company was upheld and judgment was rendered as follows: First, that Goldie Cockrill take nothing against either the Insurance Company or the Bank; second, that the Bank take nothing against the Insurance Company; third, that the Insurance Company be awarded $150.00 as attorney's fees, which amount the clerk was directed to pay out of the deposit theretofore made into court by it; fourth, that the clerk pay to the Bank the balance of the deposit of $874, plus accrued interest of $11.00, less the attorney's fees of $150.00, making the amount actually recovered $735.82; and fifth, that the policy be cancelled, terminated and held for naught. That judgment was affirmed by the Court of Civil Appeals. 103 S. W. (2d) 399.

The case will be considered in two separate phases, first, as between the Insurance Company and the other parties, and second, as between Mrs. Cockrill and the Bank. The controlling question upon the first phase of the case is whether the Bank, by the assignment of the policy to it by Cockrill thereby acquired the right, without the knowledge or consent of the insured, to surrender same for cancellation at its cash surrender value. In determining that question it becomes necessary to consider the language of the assignment and the circumstances surrounding its execution. The Insurance Company prepared and printed two forms for use by an insured in assigning a policy. On January 15, 1924,, Cockrill executed two assignments, one to the Insurance Company and one to the Bank. In the former one form was used and in the latter another form. In the assignment to the Insurance Company it was provided that, in the event the note for which it was assigned as security should not be paid at maturity, the assignee was authorized, without notice or demand for payment, to cancel the policy for and at its then cash surrender value. We turn aside here to state that the Insurance Company does not claim to have cancelled the policy by virtue of any right given it under the assignment to it. Its claim is solely that the bank exercised its authority to surrender the policy for cancellation, and that the policy was cancelled at the time the tender was made into court following the receipt of the letter from the attorney.

The assignment to the Bank was in this language:

"Assignment of Insurance Policy to Secure Creditor.

"For and in consideration of the sum of One dollar to us in hand paid, by Flatonia State Bank, Flatonia, Texas, the re-

ceipt of which is hereby acknowledged, and to secure the indebtedness hereinafter mentioned, we hereby assign, sell, transfer, convey and set over unto the said Flatonia State Bank, Flatonia, Texas, of the County of Fayette and State of Texas a certain life insurance policy issued by the Southwestern Life Insurance Company upon the life of Ellie E. Cockrill dated ——— and numbered 18550, subject to all the conditions and provisions of said policy.

"It is understood, however, that all increments to said policy, whether by dividends apportionment or otherwise, payable prior to the maturity of the policy may be paid to or used for the benefit of the insured.

"The foregoing assignment and conveyance is made and intended, however, to secure the payment of a certain indebtness owing by the insured to the said Flatonia State Bank, (in the sum of Fifty five hundred dollars ($5500.00) with 8% per cent interest per annum from this date, and said Company is hereby authorized, upon the maturity of said policy, to pay the amount of the aforesaid indebtedness here secured (not to exceed the sum due on the policy) to the said assignee, or his legal representatives, and his or their receipt therefor shall be a full and sufficient discharge of all liability under said policy to the extent of the sum so paid to said assignee; the balance of said policy, if any remain, to be payable as designated in the policy.

"For the protection of the company, it is agreed, that any discharge of this assignment, by payment of said indebtedness or otherwise, shall be evidenced by a written discharge duly subscribed and acknowledged by said assignee, or, in event of his death, by his legal representatives, and such written discharge delivered to and filed with said company.

"In the event said policy shall lapse for non-payment of premium, or non-payment of note given for premium, then the sum due thereunder (less such note) if any, shall be paid in the manner above provided to be paid at maturity.

"This assignment is executed in duplicate, one copy to be attached to the policy and one delivered to said company."

This instrument on its face clearly discloses that the assignment of the policy was only as collateral security for the note. The increments of the policy did not pass to the assignee. The Insurance Company was authorized to pay the Bank the amount of Cockrill's indebtedness to it, not to exceed the sum due on the policy, upon the maturity thereof. It is certain that, as used in the assignment, the word "maturity" referred to the

death of the insured. The only contingency in the assignment upon which payment prior to maturity is authorized to be made to the assignee is in event the policy shall lapse for non-payment of premium, a contingency which did not arise.

In connection with the language of the assignment itself it is of value to consider the construction which the parties placed thereon. The Insurance Company, as above noted, had two forms of assignment, one in which the right to surrender was expressly given and one in the form above set out in which such right is not given. When the Bank's attorney wrote to the Insurance Company enclosing a copy of its original petition and requesting a waiver the latter did not recognize the former's right so to do by paying it the then cash surrender value of the policy, less the indebtedness owing by Cockrill to it, but, on the contrary, came into court alleging its inability to determine whether the Bank possessed that authority under its assignment, and calling upon the court to adjudicate the question and prayed for attorney's fees. In April, 1930, the Insurance Company advised the Bank in a letter that if the policy was to be cancelled, a release should be executed both by the insured and the Bank. There is evidence in the record that the Bank called upon Cockrill during his lifetime to join with it in a demand for the cash surrender value of the policy and he refused to do so. In its answer in the original suit the Insurance Company interpleaded both Cockrill and his wife for the purpose of securing a judicial ascertainment of the respective rights of the parties. The Bank in its original petition did not assert its right to surrender the policy. In short, no party construed the assignment as granting that right.

This record presents for decision for the first time in this jurisdiction the precise question of whether an assignee of a life insurance policy, who holds same merely as collateral security for a debt, has the authority, by virtue of being such assignee and in the absence of any language expressly conferring such authority, to surrender such policy to the company issuing it and demand its then cash surrender value. The Insurance Company cites Shoemaker v. American National Insurance Company (Com. App.) 48 S. W. (2d) 612, as authority supporting its contention that the assignee has such right. As we understand that decision the question here presented was not in that case at all. The assignee did not hold the policy as collateral security, but had title thereto.

■ When the authorities in other jurisdictions are considered it is found that they are not in harmony upon the question

here presented. It is probably true that there are two distinct lines of holdings on the question. The better rule, we think, is that stated in Cooley's Briefs on Insurance, 2nd Ed., Vol. 7, p. 6527 as follows: "The pledgee of an insurance policy, who holds it as collateral, in the absence of a distinct provision permitting its sale, has only the right to collect, and has not the right to sell or surrender it; and if the pledgee does wrongfully surrender the policy the debt is satisfied to the extent of the value of the security surrendered (Grossman v. Lindemann, 123 N. Y. S. 108, 67 Misc. Rep. 437)." This rule was followed in Missouri State Life Ins. Co. v. Langreder, 87 Fed. (2d) 586, from which we quote:

"* * * Appellant urges that the written assignment conveyed the legal title of the policy to the assignee, and that it, as the holder of the legal title, could exercise any of the options contained in the policy when they became available. However, an insurance policy is not negotiable either by the common law or the statute of Illinois, so as to vest the legal title in the assignee. Mutual Life Ins. Co. v. Allen, 212 Ill. 134, 72 N. E. 200; Benes v. Bankers' Life Ins. Co., 282 Ill. 236, 118 N. E. 443; Hoffman v. New York Life Ins. Co., 230 Ill. App. 533. It is but a chose in action, and is governed by the same principles applicable to choses in action in general. It is assignable in equity only. United States Life Ins. Co. v. Ludwig, 103 Ill. 305. This being true, the assignee had no authority to surrender the policy without the consent of the insured. Weatherbee v. New York Life Ins. Co., 182 Mass. 342, 343, 65 N. E. 383; Manton v. Robinson (R. I.) 37 Atl. 8; Toplitz v. Bauer, 161 N. Y. 325, 55 N. E. 1059; Barrett v. Northwestern Mutual Life Ins. Co., 99 Iowa 637, 68 N. W. 906. * * *"

The lack of harmony in the decisions upon the question may be explained, in part at least, by the varying rules in different jurisdictions as to the rights and remedies of lienholders. The rule above announced is certainly in consonance with the conceptions of the rights and remedies of lienholders in this jurisdiction. That it is an equitable rule is well illustrated by the facts of this case. We allign ourselves with those authorities which recognize and follow it. Our conclusion on this phase of the case is that the Insurance Company is liable for the maturity value of the policy.

We approve the holdings of the Court of Civil Appeals and trial court on the other phase of the case, that is on the issues as between Mrs. Cockrill and the Bank. The opinion of the Court of Civil Appeals states her position in this language:

"In a separate appeal by Mrs. Cockrill, it is urged that the assignment of the policy was merely as security for the insured's debt to the bank; that this debt was barred by limitation at the time all the parties were required to, and did, replead in the consolidated cases; that the bank dismissed its suit on the note against insured which released the security therefor; and that consequently she as beneficiary, and not the bank, was entitled to recover whatever was due on said policy after deducting the amount due the insurance company. * * *"

The record discloses that suit was instituted by the Bank on the note two days before it would have become barred by limitation. After the death of Cockrill the Bank filed its First Amended Original Petition in that cause, alleging his death and further alleging that there was no longer any necessity that its lien be foreclosed; that the policy had matured by his death; and that, as assignee of the policy, it was entitled to collect the face amount thereof and apply the same to its note, which was far in excess of the value of such policy after deducting the claim of the Insurance Company against same. The petition dismissed Cockrill from the suit, but declared upon the note and sought to establish its debt as against Mrs. Cockrill and its right to collect the proceeds of the policy as against the Insurance Company. Thereafter, by order of the court, the Bank's suit and the separate suit filed by Mrs. Cockrill upon the policy were consolidated and the parties recast their pleadings. In the consolidated cause the Bank and the Insurance Company became defendants and Mrs. Cockrill plaintiff. In its answer in that cause the Bank again set up its note, the assignment of the policy to it by Mr. and Mrs. Cockrill as security therefor, and repeated its allegations as to the death of Cockrill and as to the maturity of the policy. It further alleged that at the time of filing the suit and for many years prior thereto, and at the time of his death Cockrill was hopelessly insolvent; that he left no estate; and that there was no necessity for an administration upon his estate for the reason that there were no assets of or belonging to same. The prayer was for the establishment of its debt, as against Mrs. Cockrill, and its right to collect the proceeds of the policy, as against the Insurance Company, and for judgment against the latter for the face amount of the policy less its lien thereon, with interest at six per cent per annum from July 22, 1934, the date of

Cockrill's death, together with twelve per cent as penalty and $1500.00 as attorney's fees.

■ There is a general rule recognized in this jurisdiction that, if a plaintiff voluntarily abandons his suit, the statute of limitation is not interrupted during the period when the suit was pending. 28 Tex. Jur. pp. 187 et seq. sec. 95. It is Mrs. Cockrill's position that when the Bank dismissed and abandoned as to her deceased husband the case stood as if no suit had ever been filed against him and the period of limitation continued to run without interruption. As above noted, the suit was filed two days before the note would have become barred by limitation and three months before Mr. Cockrill died. If, therefore, limitation continued to run upon the note until his death, it was barred prior to his death. We cannot adopt her views. For the abandonment of a case to have the effect contended, it must be voluntary. If the reason for such abandonment is sufficiently explained or accounted for so as to relieve it of being voluntary, the running of the statute is interrupted by the filing of the suit. Mitchell v. Thomas, 172 S. W. 715 (error dismissed). In this case the Bank did not abandon its suit upon the note. It had an election of remedies for the collection of its note. It could proceed against the estate of Cockrill on the note or it could declare upon the note as a basis of determining the limit of the amount which it was entitled to collect on the policy. It elected to establish the amount of its claim as against Mrs. Cockrill, the beneficiary, the only party other than the Insurance Company having any justiciable interest in the matter, and by so doing it but exercised its legal right to pursue that remedy and cannot be held to have thereby voluntarily abandoned its suit on the note in the sense that limitation continued to run as though no suit had ever been filed. It is a well settled rule that a money judgment for debt is not always essential to a judgment foreclosing a lien given to secure it. For example, in the case of Hartfield v. Greber (Com. App.) 207 S. W. 85, it was held that the holder of a lien upon real estate might proceed against the purchaser alone, even though the purchaser had not assumed the debt secured by the lien, and in that action established its debt and the amount thereof and subject the property to its payment. That is, in effect, what the Bank is seeking to do in this case. Its cause of action is not barred by limitation.

Our holding on the question next above discussed makes it unnecessary for us to consider the question of whether the defense of limitation, had the facts supported it, would be

available to Mrs. Cockrill in this character of action, and we express no opinion thereon.

■ In view of another trial we take notice of a question not presented here by assignment, but which will certainly be presented again to the trial court. In assessing the amount of penalties and attorney's fees the maturity value of the policy should not be taken as the basis, but that value less the amount of the prior claim of the Insurance Company.

The judgments of the trial court and Court of Civil Appeals are both reversed and the cause is remanded.

Opinion adopted by the Supreme Court April 19, 1939.

### ON REHEARING.

■ The Insurance Company and the Bank have joined in a motion for rehearing in which it is pointed out that there was sufficient evidence in the record for a determination of the amount of attorney's fees and penalties to be awarded. The Insurance Company expresses the desire to require no further litigation in the matter, since its right and liabilities have been finally adjudicated. These parties jointly request this Court to set aside its judgment heretofore entered herein, in so far as it remanded the cause to the trial court, and, in lieu thereof, to render judgment as follows:

"1. That plaintiff Goldie Cockrill take nothing by this suit.

"2. That the Clerk of the District Court of Fayette County be ordered to pay to the Flatonia State Bank the amount deposited in the registry of the court by the Southwestern Life Insurance Company on April 30, 1934, to-wit, $874.82, and any interest which might have accrued.

"3. That the Flatonia State Bank do have and recover of and from the Southwestern Life Insurance Company the sum of $5891.23.

"4. That all costs of suit herein be adjudged against the Southwestern Life Insurance Company."

Their joint request is granted. The judgment heretofore rendered reversing the judgments of the Court of Civil Appeals and the trial court and remanding the cause to the latter court for retrial is set aside, and, in lieu thereof, judgment will be entered reversing the judgments of the Court of Civil Appeals and the trial court and rendering judgment in accordance with the request of the parties above quoted.

Mrs. Goldie Cockrill, through her counsel, has filed a motion for rehearing which deserves and has received careful consideration, but we are well convinced that the bank did not voluntarily abandon its suit on the note by electing to pursue the course outlined in its amended pleadings, and her motion is accordingly overruled.

Our order is that the motion for rehearing of Mrs. Goldie Cockrill be overruled, and that the joint motion of the Bank and the Insurance Company be granted.

Opinion adopted by the Supreme Court May 31, 1939.