

# THE ATTORNEY GENERAL
## OF TEXAS

July 29, 1988

JIM MATTOX
ATTORNEY GENERAL

Honorable Mike Driscoll
Harris County Attorney
1001 Preston, Suite 634
Houston, Texas 77002

Opinion No. JM-935

Re: Whether a bondsman may deposit with the county treasurer an assignment of an insurance policy for purposes of complying with article 2372p-3, V.T.C.S. (RQ-1435)

Dear Mr. Driscoll:

You ask:

> May a bondsman, or applicant, deposit with the county treasurer an assignment of an insurance policy as collateral and comply with Article 2372p-3, Vernon's Texas Civil Statutes?

Article 2372p-3, V.T.C.S., governs the licensing and regulation of bail bondsmen. Section 6(f) of article 2372p-3 provides:

> (f) Upon notice from the [county bail bond] board that the application has been tentatively approved, the applicant shall then:

> (1) deposit with the county treasurer of the county in which the license is to be issued a cashier's check, certificate of deposit, cash, <u>or cash equivalent in the amount indicated by the applicant under Subdivision (5) of Subsection (a) of Section 6 of this Act</u> but in no event less than $50,000 except in counties with populations of less than 250,000 persons by the most recent federal census, the amount for applicants in said counties shall be $10,000 to be held in

a special fund to be called the bail security
fund. (Emphasis added.)

Article 3.49-1, section 2, of the Insurance Code
permits any insured to transfer or assign any policy or any
right or interest therein, except as prohibited by the terms
of the policy, to "any person, persons, partnership,
association, corporation or other legal entity, or any
combination thereof" and provides that such assignee shall
have at all times an insurable interest in the life of such
person.

Your question is prompted by the following facts:

A bondsman who has a $100,000 Certificate
of Deposit (CD) deposited with the Harris
County Treasurer as collateral on his license
would like to withdraw that CD and replace it
with an assignment of a life insurance policy
with a cash value of at least the same
amount.

The issue raised by these facts is whether the assignment of
a life insurance policy with the requisite cash value will
qualify as the cash equivalent of the amount required to be
deposited under article 2372p-3.

An 1887 opinion of the Supreme Court of Texas in
Kellogg v. Muller, 4 S.W. 361, 362 (Tex. 1887) defined the
term "equivalent to cash" as follows:

It is not easy to conceive what is
intended to be embraced by the use of the
words 'its equivalents;' but to be equivalent
to cash must be something commercially as
good as cash, or, as we take it, something
that could readily be converted into cash at
a fixed price.

While we find no other Texas cases defining "cash
equivalent," or "equivalent to cash," in Thompson v.
Thompson, 236 S.W.2d 779, 790 (Tex. 1951), "cash" was
defined as follows:

'Cash' is defined in Webster's New Inter-
national Dictionary, 2nd Edition, Unabridged
as 'B. A quantity of money, C. minted or
current coin. 2. Com. a. money, especially
ready money; strictly coin or specie, but
also, less strictly, bank notes, sight drafts

> or demand deposits at a bank.' (Emphasis
> ours.)  This same authority gives the phrase
> 'cash money' as a synonym for the word
> 'cash'.
>
> A similar certificate was construed in the
> case of Reese v. First National Bank of
> Bellville, Tex. Civ. App., 196 S.W.2d 48, 171
> A.L.R. 516, writ refused, NRE, to be a
> negotiable instrument, and not to be
> ambiguous.

In some contexts, the word "cash" has been given a broad meaning. For example, in construing a will, the meaning of the word "cash" has been given a broader meaning when it was necessary to carry out the intent of the testator and prevent from passing in intestacy a portion of his estate. In such instances the words "cash" and "money" have been construed to "include all kinds of property, real and personal." Flower v. Dort, 260 S.W.2d 685 (Tex. Civ. App - Ft. Worth 1953, writ ref'd n.r.e.).

We conclude, however, that the legislature clearly intended that the phrase "cash equivalent" have a much narrower definition in the instant statute. The definition of "cash" in Thompson would appear closer to what was intended by the term "cash equivalent" in article 2372p-3. We so conclude because it is clear that, whatever else the legislature may have intended to embrace with the phrase "cash equivalent," it certainly meant an instrument that is readily convertible to cash or may be converted to cash within a reasonable time and with reasonable effort. The question, then, is whether an assignee of a life insurance policy who holds the policy merely as collateral security for a debt has the right to readily convert the policy, i.e., to surrender it and demand its then cash surrender value. We conclude that he does not.

In Flatonia State Bank v. Southwestern Life Ins. Co., 127 S.W.2d 188 (Tex. 1939), set aside on other grounds, 128 S.W.2d 790 (Tex. 1939), the court addressed the issue of whether an assignee of a life insurance policy, who holds same merely as collateral security for a debt, has the authority, by virtue of being such assignee, to surrender such policy to the company issuing it and demand its cash surrender value. The court concluded that he does not. While noting that authorities in other jurisdictions are divided on the issue, the court concluded that the better rule was set forth in Cooley's Briefs on Insurance, 2d Ed., Vol. 7, p. 6527:

> The pledgee of an insurance policy, who holds it as collateral, in the absence of a distinct provision permitting its sale, has only the right to collect, and has not the right to sell or surrender it; and if the pledgee does wrongfully surrender the policy the debt is satisfied to the extent of the value of the security surrendered. (Emphasis added.)

127 S.W.2d at 191.

The court held that, when an insured transfers a life insurance policy as collateral security, the assignee does not acquire legal title. The interest acquired by the assignee "is but a chose in action and is governed by the same principles applicable to choses in action in general." 127 S.W.2d at 192. It "is not negotiable" either by the common law or statute. The court concluded that the assignee has no authority to surrender the policy and demand its cash surrender value without the insured's express consent that the assignee surrender the policy. See 45 Tex. Jur. 3d, Insurance Contracts and Coverage, § 248.

### S U M M A R Y

An assignment of a life insurance policy to the county treasurer does not constitute deposit of a "cash equivalent" within the meaning of article 2372p-3, section 6(f), where the assignor, bondsman or applicant has not also expressly authorized the County Treasurer to surrender the policy for its cash value.

Very truly yours,

JIM MATTOX
Attorney General of Texas

MARY KELLER
First Assistant Attorney General

LOU MCCREARY
Executive Assistant Attorney General

JUDGE ZOLLIE STEAKLEY
Special Assistant Attorney General

RICK GILPIN
Chairman, Opinion Committee

Prepared by Tom G. Davis
Assistant Attorney General