OWENS CORNING, et al., Appellants,

v.

Hilliard CARTER, Appellee.

Owens Corning, et al., Appellants,

v.

James B. Carroll, et al., Appellees.

Owens Corning, et al., Appellants,

v.

George R. Aday, et al., Appellees.

Owens Corning, et al., Appellants,

v.

Larry R. Chandler, et al., Appellees.

Owens–Corning Fiberglas Corporation, Owens Corning, Pittsburgh Corning Corporation, Minnesota Mining & Manufacturing Co., A.P. Green Industries, Inc., Armstrong World Industries, CertainTeed Corp., Dana Corp., Quigley Company, Inc., et al., Appellants,

v.

Austin E. Deford, et al., Appellees.

Nos. 97–1162 to 97–1166.

Supreme Court of Texas.

Argued Sept. 9, 1998.

Decided July 1, 1999.

Gary D. Elliston, Dallas, Wendy White, Washington, DC, Anthony E. Pletcher, Corpus Christi, Kevin F. Risley, Houston, G. Luke Ashley, Dallas, Solace Kirkland Southwick, Houston, for Appellants in No. 97–1162.

Gary D. Elliston, Dallas, Wendy White, Washington, DC, Anthony E. Pletcher, Corpus Christi, Kevin F. Risley, Houston, G. Luke Ashley, Dallas, Dawn Marie Wright, Dallas, Solace Kirkland Southwick, Houston, Robert E. Thackston, for Appellants in No. 97–1163.

Gary D. Elliston, Dallas, Wendy White, Washington, DC, Anthony E. Pletcher, Corpus Christi, Kevin F. Risley, Houston, G. Luke Ashley, Dallas, Solace Kirkland Southwick, Houston, Robert E. Thackston, Dallas, Thomas M. Farrell, Houston, for Appellants in No. 97–1164.

Gary D. Elliston, Dallas, Wendy White, Washington, DC, Anthony E. Pletcher, Corpus Christi, Kevin F. Risley, Houston, G. Luke Ashley, Dawn Marie Wright, Dallas, Solace Kirkland Southwick, Houston, Robert E. Thackston, Dallas, Thomas M. Farrell, Houston, for Appellants in No. 97–1165.

Gary D. Elliston, Dallas, Anthony E. Pletcher, Corpus Christi, Kevin F. Risley, Houston, Roger Podesta, Karen Schwartz, New York City, G. Luke Ashley, Dawn Marie Wright, Dallas, John Cornyn, Austin, Wendy White, Washington, DC, Solace Kirkland Southwick, Houston, Robert E. Thackston, Dallas, Thomas M. Farrell, Houston, for Appellants in No. 97–1166.

Frederick M. Baron, Russell W. Budd, Peter Andrew Kraus, Brent M. Rosenthal, Steve Baughman, Dallas, Richard N. Countiss, Houston, Tommy Jacks, Austin,

Mary Elizabeth Skelnik, Rola Saidi, Dallas, for Appellees in Nos. 97–1162 to 97–1165.

Frederick M. Baron, Russell W. Budd, Peter Andrew Kraus, Brent M. Rosenthal, Steve Baughman, Dallas, Richard N. Countiss, Houston, Tommy Jacks, Austin, for Appellees in No. 97–1166.

Justice ABBOTT delivered the opinion of the Court.

In these consolidated direct appeals we consider the constitutionality of sections 71.031(a)(3), 71.051, and 71.052(b) and (c) of the Texas Civil Practice and Remedies Code. Section 71.031(a)(3) is a borrowing statute, which provides that a foreign plaintiff's action for personal injury or death arising out of state must be brought in Texas within the limitations period provided by the law of the state in which the wrongful act, neglect, or default took place. Several Alabama plaintiffs whose asbestos claims arose in Alabama challenged the constitutionality of section 71.031(a)(3) as applied to them because their claims, which were timely under Texas's statute of limitations, were barred by Alabama's statute of limitations. The trial court held that section 71.031(a)(3) is unconstitutionally retroactive as applied to "any Alabama asbestos plaintiff whose cause of action had accrued under Texas law but was not yet barred as of May 29, 1997," the effective date of the borrowing statute. We consider whether section 71.031(a)(3) is unconstitutionally retroactive, whether it violates the open courts provision of the Texas Constitution, and whether it violates the Privileges and Immunities Clause of Article IV of the United States Constitution.

Section 71.051 is Texas's law of forum non conveniens in all actions for personal injury or death. Although the statute allows a court to dismiss a foreign plaintiff's claim under the doctrine of forum non conveniens, it provides that a court may not stay or dismiss a plaintiff's claim if the plaintiff is a legal resident of Texas. The trial court held that section 71.051 does not

violate the Privileges and Immunities Clause, and Plaintiffs challenge that holding on appeal.

Section 71.052 contains provisions requiring a court to dismiss any asbestos claim in which the plaintiff was not a resident of Texas at the time the claim arose and the claim arose outside of Texas. If the asbestos claim was filed on or after January 1, 1997 and was pending on May 29, 1997, the court must, on motion of a defendant, dismiss the claim if the defendant files certain stipulations. If the asbestos claim was filed on or after August 1, 1995, but before January 1, 1997, and was pending on May 29, 1997, the court must, on a defendant's motion and filing of certain stipulations, dismiss the claim unless the plaintiff files a written statement electing to either abate the claim for 180 days to afford the plaintiff an opportunity to file a new claim in another forum or to submit to a cap on punitive damages. The trial court held that sections 71.052(b) and (c), the dismissal provisions, violate the Privileges and Immunities Clause. We consider whether sections 71.052(b) and (c) violate the Privileges and Immunities Clause, and whether section 71.052(b) violates the Equal Protection Clauses of the Texas and United States Constitutions or the special laws provision of the Texas Constitution.

We affirm the trial court's judgment that section 71.051 does not violate the Privileges and Immunities Clause. But, contrary to the trial court, we hold that sections 71.052(b), 71.052(c), and 71.031(a)(3) do not violate any of the constitutional provisions asserted by Plaintiffs. Accordingly, we affirm in part and reverse in part.

## I

### Facts

Plaintiffs brought five separate lawsuits[1] in Texas against Owens Corning (formerly Owens–Corning Fiberglas Corporation), Pittsburgh Corning, A.P. Green Industries, Armstrong World Industries, CertainTeed Corporation, Dana Corporation, Quigley Company, United States Gypsum, Minnesota Mining & Manufacturing Co., and W.R. Grace & Company–Connecticut ("Owens Corning") and other defendants[2] for personal injuries resulting from asbestos exposure. Four of the actions (*Chandler, Carroll, Carter,* and *Aday* ) were filed in August 1995, while the *Deford* lawsuit was filed on May 5, 1997. All Plaintiffs were citizens and residents of states other than Texas when the alleged exposures occurred and when they filed their lawsuits in Texas. The actions were maintained according to Texas Civil Practice and Remedies Code section 71.031, which governs claims for death or personal injury caused by acts or omissions occurring out of state.

When the plaintiffs filed their suits, section 71.031 provided that an action for damages for death or personal injury to a citizen of another state could be enforced in Texas courts even though the wrongful act, neglect, or default causing the death or injury took place in a foreign state if: (1) a law of the foreign state or of Texas gave a right to maintain an action for damages for the death or injury; and (2) the action was begun within the time provided by Texas law. Act of May 17, 1985, 69th Leg., R.S., ch. 959, § 1, sec. 71.031, 1985 Tex. Gen. Laws 3242, 3297. In addition, the law then in effect provided that a court could not stay or dismiss an action on the basis of forum non conveniens if it was alleged that harm was caused by exposure to asbestos fibers. Act of Feb. 23, 1993, 73d Leg., R.S., ch. 4, § 1, sec. 71.051, 1993 Tex. Gen. Laws 10, 12.

### A

In early 1997, the Legislature concluded that Texas law was too amenable to claims

---

**1.** The suits were styled *Deford, et al. v. Owens–Corning Fiberglas, et al.; Chandler, et al. v. Owens Corning, et al.; Carrol, et al. v. Owens Corning, et al.; Carter et al. v. Owens–Corning, et al.;* and *Aday, et al. v. Owens–Corning, et al.*

**2.** Although Plaintiffs sued a number of other defendants, only the named defendants are parties to this appeal.

arising out of state and claims brought by foreign plaintiffs, and determined that this amenability crowded Texas courts with claims having little or no connection to Texas, at the expense of Texas residents. Additionally, the Legislature recognized that the asbestos exception to the forum non conveniens law made Texas an especially popular forum for a huge number of out-of-state asbestos claims.

The Legislature enacted Senate Bill 220, effective May 29, 1997, to address these concerns. Act of May 27, 1997, 75th Leg., R.S., ch. 424, 1997 Tex. Gen. Laws 1680. Senate Bill 220 changed Texas law in several significant ways. First, to discourage forum shopping by nonresidents with claims arising out of state, the Legislature amended section 71.031 by adding subsection (a)(3)—the borrowing statute. As amended, section 71.031(a)(3) provides that a plaintiff who is a resident of a foreign state, in an action for damages for death or personal injury, may enforce the action in a Texas court although the wrongful act, neglect, or default causing the death or injury occurred in a foreign state, but only if the action is begun in Texas within the time provided both by Texas law and by the law of the foreign state in which the wrongful act, neglect, or default took place. TEX. CIV. PRAC. & REM.CODE § 71.031(a)(3). Thus, section 71.031(a)(3) "borrows" another state's statute of limitations such that a foreign plaintiff whose cause of action for personal injury or wrongful death arose in a foreign state with a shorter limitations period than Texas's must file within the limitations period prescribed by that state's law.

Second, the Legislature amended section 71.051, the statutory forum non conveniens provision, to remove the asbestos exception, thereby permitting courts to dismiss asbestos claims the same as any other claim under the doctrine of forum non conveniens. The Legislature left in place section 71.051's provision exempting from dismissal claims filed by Texas residents. *See id.* § 71.051(e).

Third, the Legislature created section 71.052, which applies only to claims for personal injury or wrongful death in which: (1) the plaintiff was not a Texas resident when the claim arose; (2) the plaintiff's claim arose outside Texas;[3] and (3) the plaintiff's claim alleges that asbestos fiber exposure caused the harm. *Id.* § 71.052(a). Section 71.052 applies only to such actions pending on May 29, 1997, the effective date of the Act. Act of May 27, 1997, 75th Leg., R.S., ch. 424, § 4(b), 1997 Tex. Gen. Laws 1680, 1683. As to these claims, section 71.052(b) provides that "[t]he court, on motion of a defendant, shall dismiss each claim against the defendant that is subject to this section and was filed in this state on or after January 1, 1997, on the filing of a stipulation by the defendant that, for purposes of limitations, the filing of the claim in another forum would relate back to the date each plaintiff filed his claim in this state." TEX. CIV. PRAC. & REM.CODE § 71.052(b). Additionally, section 71.052(c) provides that, for each asbestos claim subject to section 71.052 filed on or after August 1, 1995 but before January 1, 1997, the court must dismiss the claim on a defendant's motion unless the plaintiff files a written statement electing either to abate the claim for 180 days in order to file an action in another state, or to retain the claim with a cap on punitive damages. *Id.* § 71.052(c). The court may not dismiss or abate a claim under either section 71.052(b) or 71.052(c) until the defendant files a stipulation that, with respect to a new action filed in another state, the plaintiff may elect to rely on discovery responses already provided. *Id.* § 71.052(f).

---

**3.** By statute, the claim arises in the state where the asbestos exposure allegedly occurred. *See* TEX. CIV. PRAC. & REM.CODE § 71.052(h) ("A court shall determine that a claim arose in the jurisdiction in which the plaintiff was located at the time the plaintiff is alleged to have been exposed to asbestos fibers.").

## B

Owens Corning filed the requisite stipulations and moved to dismiss the *Deford* Plaintiffs' claims, arguing that those claims were subject to mandatory dismissal under section 71.052(b) because: (1) the Plaintiffs' asbestos exposure occurred out of state; (2) none of the Plaintiffs were residents of Texas when their claims arose; and (3) the Plaintiffs' claims were filed after January 1, 1997 and were pending on May 29, 1997. The *Deford* suit included class action claims brought by two Alabama Plaintiffs—Raymond Lee Moore and Melvin Horton. These Plaintiffs challenged the constitutionality of sections 71.051, 71.052(b), and 71.031(a)(3) on their own behalf and on behalf of the class of "all non-Texas residents who have filed asbestos-related personal injury lawsuits in Texas state courts on or after January 1, 1997." They sought declaratory and injunctive relief preventing all Defendants from seeking to enforce these provisions.

Owens Corning filed a counterclaim and motion for class certification in the *Chandler, Aday, Carrol,* and *Carter* suits.[4] Owens Corning sought a declaratory judgment that section 71.052(c), which applies to claims filed after August 1, 1995 but before January 1, 1997, applies to the *Chandler, Aday, Carrol,* and *Carter* claims because they were filed after August 1, 1995 but before January 1, 1997 and were pending on May 29, 1997, and that section 71.052(c) is constitutional as applied to those claims. In response, Plaintiffs sought an injunction preventing Defendants from attempting to enforce section 71.052(c).

The trial court held a joint "trial" to consider the issues raised in all five cases. After hearing argument and receiving evidence, the court denied class certification and rendered interlocutory declaratory judgments in each suit. In the *Deford* action, the trial court declared section 71.031(a)(3) unconstitutional as applied and section 71.052(b) unconstitutional on its face, and issued an order enjoining all Defendants from seeking to enforce these provisions. The trial court rejected the Plaintiffs' privileges and immunities challenge to section 71.051, and denied their request for injunctive relief. In the other four actions, the trial court declared section 71.052(c) unconstitutional as applied to certain plaintiffs who commenced suit between August 1, 1995 and September 1, 1995, and enjoined all Defendants from seeking to enforce the provision against those Plaintiffs.

## II

### Jurisdiction

■ Owens Corning asserts direct appeal jurisdiction premised on the trial court's enjoining all Defendants in the case from seeking to enforce sections 71.031(a)(3), 71.052(b), and 71.052(c). "An appeal may be taken directly to the supreme court from an order of a trial court granting or denying an interlocutory or permanent injunction on the ground of the constitutionality of a statute of this state." Tex. Gov't Code § 22.001(c); *see* Tex. Const. art. V, § 3–b.

Plaintiffs contend that jurisdiction is lacking because "the purported injunctive relief granted by the trial court below was actually no more than a declaratory judgment under another name." Plaintiffs argue that they sought injunctive relief to prevent the constitutional issues from being relitigated in other courts with respect to absent members of the putative class. Because the trial court denied class certification, Plaintiffs contend that the injunctions have no force or effect independent of the trial court's interlocutory declaratory judgments in the individual suits and are therefore insufficient to confer direct appeal jurisdiction.[5] This argument is

---

4. Because these suits were filed before January 1, 1997, section 71.052(b) does not apply to them.

5. Alternatively, Plaintiffs filed a cross direct appeal premised on the trial court's denial of injunctive relief relating to the alleged unconstitutionality of section 71.051.

without merit. Plaintiffs sought temporary and permanent injunctive relief on their own behalf and on behalf of the putative class. The fact that they received an injunction solely on their own behalf does not transform the injunction into mere declaratory relief and does not deprive this Court of jurisdiction. The trial court issued orders granting and denying injunctive relief on the grounds of the constitutionality of Senate Bill 220, and each party has appealed. As such, the requirements of section 22.001(c) are satisfied.

## III

### Section 71.051

In their direct appeal, Plaintiffs challenge the trial court's denial of injunctive relief with regard to section 71.051. Plaintiffs contend that section 71.051 violates the Privileges and Immunities Clause of the United States Constitution, which provides that "[t]he Citizens of each State shall be entitled to all Privileges and Immunities of Citizens in the several States," U.S. CONST. art. IV, § 2, because, although it allows a court to dismiss a foreign plaintiff's claim under the doctrine of forum non conveniens, it does not permit a court to dismiss a claim if the plaintiff is a Texas resident.

Section 71.051 applies to all personal injury and wrongful death actions. It provides that, with respect to a plaintiff who is a legal resident of the United States, a claim or action may be dismissed in whole or in part if the party seeking to stay or dismiss the claim or action proves by a preponderance of the evidence that: (1) an alternative forum exists in which the claim or action may be tried; (2) that forum provides an adequate remedy; (3) maintenance of the claim or action in Texas courts would work a substantial injustice to the moving party; (4) the alternative forum can exercise jurisdiction over all the defendants properly joined to the plain-

tiff's claim; (5) the balance of the private interests of the parties and the public interest of the state predominates in favor of the claim or action being brought in an alternative forum; and (6) the stay or dismissal would not result in unreasonable duplication or proliferation of litigation. TEX. CIV. PRAC. & REM.CODE § 71.051(b). A court may not stay or dismiss a plaintiff's claim under subsection (b) if the plaintiff is a legal resident of Texas. *Id.* § 71.051(e). In addition, a court may not stay or dismiss a claim if a plaintiff makes a prima facie showing that an act or omission that was a proximate or producing cause of the injury or death occurred in Texas. *Id.* § 71.051(f).

Owens Corning asserts that section 71.051 does not violate the Privileges and Immunities Clause because it is "legally indistinguishable" from a statute upheld by the Supreme Court in *Douglas v. New York, New Hampshire & Hartford Railroad,* 279 U.S. 377, 49 S.Ct. 355, 73 L.Ed. 747 (1929). In *Douglas,* the New York courts, pursuant to statute,[6] had dismissed a suit brought by a citizen of Connecticut against a Connecticut corporation doing business in New York. The Supreme Court considered a privileges and immunities challenge to the statute, which the New York courts had construed to allow a court in its discretion to dismiss an action by a resident of another state, but not an action brought by a New York resident. *Id.* at 386, 49 S.Ct. 355. The Court noted that the statute discriminated on the basis of residence rather than citizenship, and held that the statute did not violate the Privileges and Immunities Clause because "[a] distinction of privileges according to residence may be based upon rational considerations and has been upheld by this Court, emphasizing the difference between citizenship and residence." *Id.* at 387, 49 S.Ct. 355. The Court concluded that the statute was constitutional because "[t]here are manifest reasons for preferring resi-

---

**6.** The statute provided that "[a]n action against a foreign corporation may be maintained by ... a non-resident ... only ...

[w]hen a foreign corporation is doing business within this State." *Douglas,* 279 U.S. at 386, 49 S.Ct. 355.

dents in access to often overcrowded Courts, both in convenience and in the fact that broadly speaking it is they who pay for maintaining the Courts concerned." *Id.*

In *Missouri ex rel. Southern Railway v. Mayfield,* 340 U.S. 1, 3–4, 71 S.Ct. 1, 95 L.Ed. 3 (1950), a later case citing *Douglas,* the Court stated:

> By reason of the Privileges–and–Immunities Clause ... Missouri cannot allow suits by nonresident Missourians for liability under the Federal Employers' Liability Act arising out of conduct outside that State and discriminatorily deny access to its courts to a non-resident who is a citizen of another state. But if a State chooses to "[prefer] residents in access to often overcrowded Courts" and to deny such access to all non-residents, whether its own citizens or those of other States, it is a choice within its own control.

Relying on *Douglas* and *Mayfield,* many courts have followed the general rule that applying the doctrine of forum non conveniens to refuse jurisdiction in an action brought by a citizen of a foreign state does not violate the Privileges and Immunities Clause if jurisdiction would be refused in an action brought by a citizen of the forum state in the same circumstances.[7] A particular state may apply the doctrine of forum non conveniens, as long as it is applied to citizens and noncitizens alike. Accordingly, Texas might violate the Privileges and Immunities Clause by choosing to apply the doctrine of forum non conveniens to nonresident nonTexans while exempting nonresident Texans from its application.

■ Thus, if section 71.051 discriminates solely on the basis of *residence, Douglas* dictates that it may do so without running afoul of the Privileges and Immunities Clause. If, however, section 71.051 discriminates on the basis of *citizenship, Mayfield* indicates that such discrimination might be unconstitutional. Owens Corning contends that the statute, which prohibits dismissal if the plaintiff is a "legal resident" of Texas, falls in the former category; Plaintiffs contend it is the latter because the statute's definition of "legal resident" effectively permits nonresident Texas citizens to survive dismissal.

The statute defines "legal resident" as "an individual who intends the specified political subdivision to be his permanent residence and who intends to return to the specified political subdivision despite temporary residence elsewhere or despite temporary absences, without regard to the individual's country of citizenship or national origin." TEX. CIV. PRAC. & REM.CODE § 71.051(h). Because of the broad definition of "legal resident," Plaintiffs argue that section 71.051(e) would preclude dismissal of a claim brought by a Texas citizen temporarily residing in Alabama (as long as that person intended Texas to be his permanent residence) whose injuries arose in Alabama, even when the forum non conveniens factors favor dismissal and even though a similarly situated Alabama citizen's claim would be dismissed. As such, Plaintiffs assert, the statute effectively precludes dismissal of claims arising out of state brought by nonresident Texas citizens but allows dismissal of claims arising out of state brought by nonresident noncitizens, a result that violates the Privi-

---

**7.** *See, e.g., Grovey v. Washington Nat'l Ins. Co.,* 196 Ark. 697, 119 S.W.2d 503 (1938); *Price v. Atchison, T. & S.F. R.R.,* 42 Cal.2d 577, 268 P.2d 457 (1954), *cert. denied,* 348 U.S. 839, 75 S.Ct. 44, 99 L.Ed. 661 (1954); *Whitney v. Madden,* 400 Ill. 185, 79 N.E.2d 593 (1948), *cert. denied,* 335 U.S. 828, 69 S.Ct. 55, 93 L.Ed. 382 (1948); *Johnson v. Chicago, Burlington & Quinney R.R. Co.,* 243 Minn. 58, 66 N.W.2d 763 (1954); *Loftus v. Lee,* 308 S.W.2d 654, 657 (Mo.1958); *Elliott*

*v. Johnston,* 365 Mo. 881, 292 S.W.2d 589, 595 (1956); *Gore v. United States Steel Corp.,* 15 N.J. 301, 104 A.2d 670 (1954), *cert. denied,* 348 U.S. 861, 75 S.Ct. 84, 99 L.Ed. 678 (1954); *St. Louis–San Francisco Ry. Co. v. Superior Court,* 276 P.2d 773 (Okla.1954) & 290 P.2d 118 (Okla.1955); *Zurick v. Inman,* 221 Tenn. 393, 426 S.W.2d 767, 770 (1968); *Mooney v. Denver & Rio Grande W. R.R.,* 118 Utah 307, 221 P.2d 628 (1950).

leges and Immunities Clause under *Douglas* and *Mayfield*.

The Supreme Court addressed a similar argument in *Douglas*, in which the plaintiffs contended that, although the statute used the term "nonresident," it effectively "authorize[d] the Court in its discretion to dismiss an action by a citizen of another State but not an action brought by a citizen of New York." 279 U.S. at 386, 49 S.Ct. 355. The *Douglas* plaintiffs argued that because a citizen of New York is a resident of New York wherever he may be living, all citizens of New York could bring suit, whereas citizens of other states could not unless they were actually living in New York. *Id.* In response, the Supreme Court construed the term "resident" in the strict primary sense of "one actually living in the place for the time, irrespective even of domicile." *Id.; see also Loftus v. Lee*, 308 S.W.2d 654, 657 (Mo.1958) (noting that, in *Douglas*, the term "nonresident" was interpreted to embrace citizens of New York who did not actually live in the state at the time suit was brought). So construed, the statute "applie[d] to citizens of New York as well as to others and put[ ] them on the same footing. There [was] no discrimination between citizens as such, and none between nonresidents with regard to the[ ] foreign causes of action." *Douglas*, 279 U.S. at 387, 49 S.Ct. 355.

The crux of Plaintiffs' argument is that, unlike the statute in *Douglas*, a Texas citizen temporarily residing in Alabama but simply intending Texas to be his permanent home may take advantage of section 71.051(e). Owens Corning contends that the statutory definition of "legal resident" simply tracks the definition of residence in the Election Code, *see* TEX. ELEC. CODE. § 1.015, and this definition is not

equated with Texas citizenship; instead, the definition of "legal resident" in section 71.051 may be construed to exclude nonresident Texas citizens, thereby treating them the same as nonresident noncitizens. Owens Corning contends that we are obligated to construe the statute in this manner to avoid constitutional infirmities. *See* TEX. GOV'T CODE § 311.021(1); *see also Douglas*, 279 U.S. at 387, 49 S.Ct. 355. We agree.

The definition of "legal resident" in 71.051 is largely similar to the definition in the Election Code.[8] Both provide that the person must intend the place to be his home or permanent residence, to which he intends to return after temporary absences. But a significant difference is section 71.051's addition of the clause "despite temporary residence elsewhere." Although Plaintiffs contend that this language prohibits Texas courts from dismissing claims by nonresident Texas citizens and thus renders the statute constitutionally infirm, we disagree that the quoted language creates such a prohibition. Rather, we hold that section 71.051 plainly requires that the plaintiff be a resident of Texas to avoid dismissal. *See* TEX. CIV. PRAC. & REM.CODE § 71.051(e) ("The court may not stay or dismiss a plaintiff's claim ... *if the plaintiff is a legal resident of this state.*") (emphasis added); *see also id.* § 71.051(h)(1).

Under section 71.051(h)(1), a person's place of "legal residence" is the specified political subdivision intended to be the person's *permanent* residence. *Id.* § 71.051(h)(1). A person may have a legal residence in Texas "despite *temporary* residence elsewhere or despite temporary absences." *Id.* (emphasis added). With re-

---

8. The Election Code provides:
 (a) In this code, "residence" means domicile, that is, one's home and fixed place of habitation to which one intends to return after any temporary absence.
 (b) Residence shall be determined in accordance with the common-law rules, as enunciated by the courts of this state, except as otherwise provided by this code.
 (c) A person does not lose the person's residence by leaving the person's home to go to another place for temporary purposes only.
 (d) A person does not acquire a residence in a place to which the person has come for temporary purposes only and without the intention of making that place the person's home.
 TEX. ELEC.CODE § 1.015.

gard to a person who has a "temporary residence elsewhere," the statute assumes the existence of two residences—one permanent, one temporary. To take advantage of section 71.051(e), a person's permanent residence must be in Texas. *Id.* § 71.051(e). The statute does not define "permanent residence." Accordingly, we look to the generally accepted meaning of the term. With respect to individuals, "residence" means the "[p]lace where one actually lives or has his home; a person's dwelling place or place of habitation; ... a dwelling house." BLACK's LAW DICTIONARY 907 (abridged 6th ed.1991). In addition, although intent is *necessary* to establish a permanent residence, it alone is not *sufficient* to establish a permanent residence. *See Mills v. Bartlett*, 377 S.W.2d 636, 637 (Tex.1964) ("Neither bodily presence alone nor intention alone will suffice to create the residence, but when the two coincide at that moment the residence is fixed and determined."). Thus, a permanent residence in Texas requires a home and fixed place of habitation to which a person intends to return when away. *Cf.* TEX. ELEC. CODE § 1.015. So construed, section 71.051 does not discriminate between nonresident citizens and nonresident noncitizens.

Plaintiffs also contend that we may not rely on *Douglas* because it is no longer good law. Plaintiffs assert that, in upholding the constitutionality of the statute, the *Douglas* Court relied on a now "discarded" distinction between residents and citizens. Plaintiffs cite a number of Supreme Court cases decided after *Douglas* in which the Court has stated that the distinction is largely irrelevant for purposes of the Privileges and Immunities Clause. *See, e.g., Supreme Court of New Hampshire v. Piper*, 470 U.S. 274, 278 n. 6, 105 S.Ct. 1272, 84 L.Ed.2d 205 (1985). In addition, Plaintiffs contend that modern Privileges and Immunities analysis requires the courts to determine whether less restrictive means are available, and that section 71.051 could not withstand such scrutiny. *See, e.g., Barnard v. Thorstenn*, 489 U.S. 546, 552–53, 109 S.Ct. 1294, 103 L.Ed.2d 559 (1989).

Although Plaintiffs are correct that modern privileges and immunities law differs from that announced in *Douglas, see Toomer v. Witsell*, 334 U.S. 385, 68 S.Ct. 1156, 92 L.Ed. 1460 (1948), and the distinction between residents and citizens is in disfavor in most contexts, we are nonetheless bound to follow *Douglas* because it has never been overruled by the Supreme Court. *See Rodriguez de Quijas v. Shearson/American Express, Inc.*, 490 U.S. 477, 484, 109 S.Ct. 1917, 104 L.Ed.2d 526 (1989) ("If a precedent of this Court has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the [court] should follow the case which directly controls, leaving to this Court the prerogative of overruling its own decisions."); *In re Smith Barney, Inc.*, 975 S.W.2d 593, 598 & n. 27 (Tex.1998) (same); *see also Florida League of Prof'l Lobbyists, Inc. v. Meggs*, 87 F.3d 457, 462 (11th Cir.1996) ("[W]e are not at liberty to disregard binding case law that is so closely on point and has been only weakened, rather than directly overruled, by the Supreme Court."). And, as noted previously, courts continue to rely on *Douglas*, despite later developments in privileges and immunities jurisprudence. Moreover, *Mayfield*, which reiterated the holding in *Douglas*, was decided after the so-called "modern" privileges and immunities analysis was adopted. Thus, we are bound by *Douglas* unless and until the Supreme Court overrules it.

## IV

### Section 71.031(a)(3)

■ Under the borrowing statute, foreign plaintiffs must commence their suits both within the time provided by Texas law and "within the time provided by the laws of the foreign state ... in which the wrongful act, neglect, or default took place." TEX. CIV. PRAC. & REM.CODE § 71.031(a)(2), (3). The borrowing statute applies to all personal injury and wrongful death actions. Thus, a foreign plaintiff whose cause of action for personal injury

or wrongful death arose in a foreign state with a shorter limitations period than Texas's must file within the limitations period prescribed by that state's law.

There is no dispute that Plaintiffs' claims would be subject to Texas's statute of limitations under the law as it existed before adoption of the borrowing statute. *See* Act of May 17, 1985, 69th Leg., R.S., ch. 959, § 1, sec. 71.031, 1985 Tex. Gen. Laws 3242, 3297. For some Alabama plaintiffs such as Moore and Horton whose claims would likely be timely if governed by Texas's limitations law, application of Alabama's statute of limitations via the borrowing statute now bars their claims. These Plaintiffs contended below, and the trial court held that, as applied to them, section 71.031(a)(3) violates Article I, Section 16 of the Texas Constitution. Plaintiffs also contend that section 71.031(a)(3) violates open courts and the Privileges and Immunities Clause. We disagree with each of these contentions.

## A

■ Plaintiffs contend that applying the borrowing statute to certain of the Plaintiffs' claims violates Article I, Section 16 of the Texas Constitution, which provides: "No bill of attainder, ex post facto law, retroactive law, or any law impairing the obligation of contracts, shall be made." Plaintiffs argue that the borrowing provision, which applies to all suits filed on or after the effective date of the Act, cuts off their accrued claims without providing a reasonable grace period after the Act's effective date in which to file their claims, and is therefore unconstitutionally retroactive. The trial court agreed, and ruled that section 71.031(a)(3) is unconstitutionally retroactive as applied to "any Alabama asbestos plaintiff whose cause of action had accrued under Texas law but was not yet barred as of May, 29, 1997," the effective date of the borrowing statute. Owens Corning challenges that ruling in its direct appeal.

In finding section 71.031(a)(3) unconstitutionally retroactive, the trial court relied on the principle that the Legislature can pass legislation affecting a remedy for an accrued cause of action without violating Article I, Section 16, if it affords a reasonable time or fair opportunity to preserve a claimant's rights under the former law. We recently reaffirmed this principle in *City of Tyler v. Likes*, 962 S.W.2d 489, 502 (Tex.1997). There, we held that application of an amended statute defining a municipality's sovereign immunity was not unconstitutionally applied because, although the amendment affected the plaintiff's remedy by rendering the defendants immune, the Legislature allowed a reasonable time for the plaintiff to preserve her rights under the old law. *Id.* This Court has also held that when the Legislature shortens an existing statute of limitations or creates one where none had existed, it must provide a reasonable time for plaintiffs to bring suit after the enactment of the new law. *Mellinger v. City of Houston*, 68 Tex. 37, 3 S.W. 249, 254–55 (1887) ("[I]f a statute of limitations applied to existing causes barred all remedy, or did not afford a reasonable period for their prosecution ... such legislation would be retrospective, within the intent of the prohibition, and would therefore be wholly inoperative."); *De Cordova v. City of Galveston*, 4 Tex. 470, 480 (1849). Because the Legislature did not provide a grace period, the trial court concluded that applying section 71.031(a)(3) to bar accrued claims was unconstitutional. We now determine whether the Legislature violated Article I, Section 16 by directing that the borrowing statute be applied to bar accrued claims without allowing affected parties a reasonable grace period for filing their claims after its enactment. We hold that such application does not violate Article I, Section 16 of the Texas Constitution.

The prohibition against retroactive laws derives largely from the sentiment that such laws unfairly deprive people of legitimate expectations. *See Landgraf v. USI Film Prods.*, 511 U.S. 244, 265, 114 S.Ct. 1483, 128 L.Ed.2d 229(1994). Considerations of fair notice, reasonable reliance, and settled expectations play a prominent

role when a state legislature shortens an existing statute of limitations for causes of action arising in that state or when it creates an immunity where none existed before, thereby disrupting settled expectations and extinguishing accrued causes of action. Here, where the Alabama plaintiffs failed to sue within the time period allotted by Alabama law—the state in which they live and in which the cause of action arose—and brought suit in Texas to avoid Alabama's time bar, such concerns play a minimal role and do not justify the application of a grace period. *See In re TMI*, 89 F.3d 1106, 1116 (3d Cir.1996), *cert. denied*, 519 U.S. 1077, 117 S.Ct. 739(1997).

First, any "expectations" that Plaintiffs might have had with regard to Texas's limitations period are insufficient to require Texas to afford Plaintiffs a grace period. The borrowing statute did not significantly change existing law. Both Texas's and Alabama's statutes of limitations remain unchanged with respect to causes of action arising in each state. The borrowing statute simply provides that the statute of limitations of the state in which the wrongful act, neglect, or default occurred must be satisfied; it is essentially a codified choice-of-law rule governing the timeliness of actions. *See, e.g., Sautter v. Interstate Power Co.*, 567 N.W.2d 755, 760 n. 4 (Minn.Ct.App.1997); *Green Acres Enters., Inc. v. Freeman*, 876 S.W.2d 636, 639 (Mo.Ct.App.1994); *Thimm v. Automatic Sprinkler Corp.*, 148 Wis.2d 332, 434 N.W.2d 842, 845 (1988). Application of the limitations law of the state in which the Plaintiffs live and were allegedly injured, as directed by the borrowing statute, is not inequitable. *In re TMI*, 89 F.3d at 1113–14.

Second, requiring a grace period for otherwise time-barred claims would defeat the very purpose of the borrowing statute: a plaintiff should not be able to gain greater rights than he would have in the state where the cause of action arose and where he lives simply by bringing suit in Texas. *See Patch v. Playboy Enters., Inc.*, 652 F.2d 754, 756 (8th Cir.1981) (per curiam);

*Celotex v. Meehan*, 523 So.2d 141, 143 (Fla.1988); *Green Acres*, 876 S.W.2d at 639; *Gwaltney v. Stone*, 387 Pa.Super. 492, 564 A.2d 498, 503 (1989) (purpose of borrowing statute is "to prevent a plaintiff who sues in Pennsylvania from obtaining greater rights than those available in the state where the cause of action arose"). Therefore, we decline to hold that Article I, Section 16 requires a grace period in this case and we reverse the trial court's holding that section 71.031(a)(3) is unconstitutional as applied to certain plaintiffs.

**B**

■ Plaintiffs also contend that application of the borrowing statute to bar their claims violates the open courts provision of the Texas Constitution, which provides that "[a]ll courts shall be open, and every person for an injury done to him, in his lands, goods, person or reputation, shall have remedy by due course of law." TEX. CONST. art. I, § 13. The trial court held that the borrowing provision did not violate the open courts provision, and Plaintiffs challenge that ruling.

■ Among other guarantees, the open courts provision provides that " 'the legislature may not abrogate the right to assert a well-established common law cause of action unless the reason for its action outweighs the litigants' constitutional right of redress.' " *Trinity River Auth. v. URS Consultants, Inc.*, 889 S.W.2d 259, 261 (Tex.1994) (quoting *Texas Ass'n of Bus. v. Texas Air Control Bd.*, 852 S.W.2d 440, 448 (Tex.1993)). Thus, to establish an open courts violation in this context, Plaintiffs must show that: (1) they have a well-recognized common-law cause of action that is being restricted; and (2) the restriction is unreasonable or arbitrary when balanced against the purpose and basis of the statute. *Moreno v. Sterling Drug, Inc.*, 787 S.W.2d 348, 355 (Tex.1990).

Plaintiffs Horton and Moore argue that the borrowing provision unjustifiably cuts off their right to sue without a reasonable opportunity to discover the wrong and

bring suit. This is so, Plaintiffs contend, because Texas courts must apply Alabama limitations law in asbestos cases brought by Alabama residents, but Alabama's statute of limitations does not provide a reasonable opportunity to discover the wrong because it requires asbestos victims to bring suit before they can discover their injuries. *See Garrett v. Raytheon Co.,* 368 So.2d 516, 521 (Ala.1979) (holding that a cause of action for latent injuries caused by toxic exposure accrues at the time of the plaintiff's last exposure to the toxic substance). As such, Plaintiffs contend, the open courts provision should protect them from having their rights cut off through application of a limitations statute that fails to provide a reasonable opportunity to discover the injury. *See Weiner v. Wasson,* 900 S.W.2d 316, 319 (Tex.1995). Owens Corning argues that Plaintiffs cannot satisfy their burden of proof because any restriction on Plaintiffs' rights is not unreasonable or arbitrary—the borrowing statute simply adopts the restrictions imposed by the state where the cause of action arose and whose law gave rise to the claim.

■ In evaluating whether a statute violates the open courts provision, we consider both the general purpose of the statute and the extent to which the litigant's right is affected. *Sax v. Votteler,* 648 S.W.2d 661, 665–66 (Tex.1983). The cause of action at issue is an Alabama plaintiff's personal injury claim arising in Alabama. The right to pursue that claim cannot be said to be unreasonably abrogated by the borrowing statute when it remains the same under Alabama law as it was before. The only right being restricted is the Alabama Plaintiffs' right to pursue that claim in Texas after it is time-barred in Alabama. The Legislature's adoption of section 71.031(a)(3) to restrict that right is a valid exercise of its police power.

■ It is within the authority of the Legislature to make reasoned adjustments in the legal system. *See Morrison v. Chan,* 699 S.W.2d 205, 208 (Tex.1985). As stated previously, the purpose of the bor-

rowing provision is to prevent plaintiffs from gaining greater rights than they would have had in the state where the cause of action arose simply by filing suit in Texas. Because Texas, unlike most other states, had no borrowing statute, it had become a popular forum for plaintiffs whose claims were time-barred where they arose. The Legislature considered testimony and evidence revealing that such transitory actions diverted judicial resources and crowded the courts. The Legislature determined, as a matter of state policy, that Texas resources should not be expended on such transitory actions. These findings meet the test of an "important" state interest.

The Legislature recognized the need to "bring Texas into the mainstream"; it reasonably concluded that adopting a borrowing statute would alleviate these problems. The remedy—adoption of the borrowing statute—is directly related to the crisis identified by the Legislature and bears a real relationship to the articulated legislative goals. As such, it does not violate Article I, Section 13.

### C

■ Last, Plaintiffs challenge the trial court's finding that the borrowing statute does not violate the Privileges and Immunities Clause of Article IV of the United States Constitution. Plaintiffs argue that the borrowing provision violates the Privileges and Immunities Clause because it only applies to claims brought by nonresidents. Thus, unlike nonresidents whose claims arose outside of Texas, Texas residents are not subject to the borrowing statute, even if their claims also arose outside of the state. We hold that the borrowing statute does not violate the Privileges and Immunities Clause.

The United States Supreme Court decided this very issue in *Canadian Northern Railway v. Eggen,* 252 U.S. 553, 40 S.Ct. 402, 64 L.Ed. 713 (1920). In that case, the Court addressed a challenge to Minnesota's borrowing statute, which stat-

ed that, "[w]hen a cause of action has arisen outside of this state and, by the laws of the place where it arose, an action thereon is there barred by lapse of time, no such action shall be maintain[ed] in this state unless the plaintiff be a citizen of the state who has owned the cause of action ever since it accrued." *Id.* at 558, 40 S.Ct. 402. The plaintiff was a citizen of South Dakota whose cause of action arose in Canada. Plaintiff's personal injury claim was barred by Canada's one-year statute of limitations at the time plaintiff filed suit in Minnesota, although it would have been timely under Minnesota's six-year limitations period.

The Court held that Minnesota's borrowing statute did not violate the Privileges and Immunities Clause because "the constitutional requirement is satisfied if the non-resident is given access to the courts of the State upon terms which in themselves are reasonable and adequate for the enforcing of any rights he may have, even though they may not be technically and precisely the same in extent as those accorded to resident citizens." *Id.* at 562, 40 S.Ct. 402. The Court reasoned:

> The laws of Minnesota gave to the nonresident respondent free access to its courts, for the purpose of enforcing any right which he may have had, for a year,—as long a time as was given him for that purpose by the laws under which he chose to live and work—and having neglected to avail himself of that law, he may not successfully complain because his expired right to maintain suit elsewhere is not revived for his

benefit . . . for the sole purpose of prosecuting his suit.

*Id.* at 563, 40 S.Ct. 402. Thus, the Court concluded that "[t]he privilege extended to [plaintiff] for enforcing his claim was reasonably sufficient and adequate and the statute is a valid law." *Id.*

Plaintiffs acknowledge the existence of this controlling Supreme Court authority, but argue that it is inapplicable because, in contrast to the *Eggen* plaintiff who suffered an acute personal injury, the Alabama Plaintiffs suffered from a latent toxic injury and were not given "a length of time reasonably sufficient to enable an ordinarily diligent man to institute proceedings" because Alabama law does not apply the discovery rule to latent toxic injury cases.[9]

The fact that Alabama does not apply the discovery rule to the case at hand does not render application of its statute of limitations by Texas courts unreasonable. *Eggen* does not require all states with a discovery rule in latent toxic tort cases to become a forum for Alabama asbestos claims. In applying borrowing statutes, several courts have held that the law of the state where the action arose applies with regard to tolling provisions and accrual, even when those provisions are less favorable than those provided by the forum state. *See, e.g., Waldron v. Armstrong Rubber Co.,* 64 Mich.App. 626, 236 N.W.2d 722, 725 (1975); *Gwaltney v.Stone,* 387 Pa.Super. 492, 564 A.2d 498, 503 (1989). And at least one court has relied on *Eggen* to reject a Privileges and Immunities challenge to a borrowing statute even though

9. The Alabama Code provided a one-year statute of limitations for all injuries not arising from contract. Ala.Code § 6–2–39 (1975) (amended 1985). In 1979, the Supreme Court of Alabama held that, with regard to asbestos exposure claims, the statute of limitations began to run on the date of last exposure. *Garrett v. Raytheon Co.,* 368 So.2d 516, 521 (Ala.1979). In 1980, the Alabama Legislature amended section 6–2–30 to provide that "a civil action for any injury to the person or rights of another resulting from exposure to asbestos . . . shall be deemed to accrue on the first date the injured party, through

reasonable diligence, should have reason to discover the injury giving rise to such civil action." Ala.Code § 6–2–30. Although the statute was intended to apply to pending claims, the Alabama Supreme Court has held that it cannot be applied retroactively to actions already barred by limitations at the time of its enactment. *Tyson v. Johns–Manville Sales Corp.,* 399 So.2d 263, 268–70 (Ala. 1981), *reaffirmed by Johnson v. Garlock, Inc.,* 682 So.2d 25, 28 (Ala.1996). Thus, Alabama's discovery rule for asbestos exposure cases generally applies only if the plaintiff was exposed after 1979.

the law of the state in which the action accrued did not provide a discovery rule for latent toxic exposure. *See Helinski v. Appleton Papers,* 952 F.Supp. 266, 274 (D.Md.1997) (although Maryland had a three-year statute of limitations and discovery rule, the court applied Maryland's borrowing statute so that Virginia's statute of limitations, with no discovery rule, barred plaintiffs' claims for latent toxic exposure to carbonless copy paper, and cited *Eggen* for the proposition that the statute did not violate the Privileges and Immunities Clause). Plaintiffs cite no case to the contrary.

In essence, Plaintiffs petition this Court to hold that Alabama's statute of limitations is unreasonable, despite the fact that Alabama's statute of limitations has been upheld as constitutional by the Alabama Supreme Court. *See Johnson v. Garlock,* 682 So.2d 25, 28 (Ala.1996); *Tyson v. Johns–Manville Sales Corp.,* 399 So.2d 263, 268–70 (Ala.1981); *Garrett v. Raytheon,* 368 So.2d 516, 521 (Ala.1979). Moreover, Plaintiffs' position would require the invalidation of nearly every state's borrowing statute as applied to Alabama plaintiffs, a result decried by the Supreme Court in *Eggen. See Eggen,* 252 U.S. at 560, 40 S.Ct. 402.

For these reasons, we hold that section 71.031(a)(3) does not violate the Privileges and Immunities Clause of the United States Constitution.

## V

### Section 71.052

In the trial court, Plaintiffs brought several challenges to section 71.052 under the Texas and United States Constitutions. The trial court rejected the Plaintiffs' challenges to section 71.052(b) under Article III, Section 56 of the Texas Constitution and on equal protection grounds. However, the trial court agreed with the Plain-

tiffs that sections 71.052(b) and (c) violate the Privileges and Immunities Clause of the United States Constitution because they treat nonresident plaintiffs less favorably than resident plaintiffs. The trial court held that section 71.052(b) was unconstitutional on its face, whereas section 71.052(c) was unconstitutional only as applied to plaintiffs who commenced their suits between August 1, 1995 and August 31, 1995.[10] Owens Corning challenges the trial court's judgment declaring sections 71.052(b) and (c) unconstitutional and enjoining Owens Corning from seeking to enforce these provisions against the Plaintiffs.

### A

Unlike sections 71.051 and 71.031(a)(3), which apply to all claims for personal injury or death, section 71.052's application is limited to asbestos claims. It applies only to claims for personal injury or wrongful death pending on the effective date of the Act (May 29, 1997) in which: (1) the plaintiff was not a Texas resident at the time the claim arose; (2) the plaintiff's claim arose outside Texas; and (3) the plaintiff's claim alleges that harm was caused by exposure to asbestos fibers. Tex. Civ. Prac. & Rem.Code § 71.052(a); Act of May 27, 1997, 75th Leg., R.S., ch. 424, §§ 2, 4(b), 1997 Tex. Gen. Laws 1680, 1682, 1683. It also provides that "[a] court shall determine that a claim arose in the jurisdiction in which the plaintiff was located at the time the plaintiff is alleged to have been exposed to asbestos." Tex. Civ. Prac. & Rem.Code § 71.052(h).

Section 71.052 has separate provisions dealing with pending asbestos claims, depending on the date the claims were filed. Subsection (b) provides:

> The court, on motion of a defendant, shall dismiss each claim against the de-

---

10. All claims filed on or after September 1, 1995 are subject to the same cap on punitive damages found in section 71.052(c). Tex. Civ. Prac. & Rem.Code § 41.008(b); Act of Apr. 11, 1995, 74th Leg., R.S., ch. 19, § 1, sec. 2, 1995

Tex. Gen. Laws 108, 113. Thus, only claims subject to section 71.052 filed between August 1, 1995 and August 31, 1995 are affected by section 71.052(c).

fendant that is subject to this section and was filed in this state on or after January 1, 1997, on the filing of a stipulation by the defendant that, for the purposes of limitations, the filing of the claim in another forum would relate back to the date each plaintiff filed his claim in this state.

*Id.* § 71.052(b). The trial court correctly noted that, although not expressly stated, section 71.052(b) applies only to claims filed on or after January 1, 1997 but before May 29, 1997, the effective date of the Act. Act of May 27, 1997, 75th Leg., R.S., ch. 424, § 4(b), 1997 Tex. Gen. Laws 1680, 1683.

For claims filed before January 1, 1997 but after August 1, 1995, section 71.052(c) states:

The court, on motion of a defendant, shall dismiss each claim against the defendant that is subject to this section and was commenced in this state on or after August 1, 1995, but before January 1, 1997, unless the plaintiff files a written statement electing to:

(1) abate the plaintiff's claim against the defendant for a period of 180 days from the date the court disposes of the defendant's motion, to afford the plaintiff an opportunity to file a new action on the claims in another state of the United States; or

(2) retain the plaintiff's claims against the defendant in this state and limit the plaintiff's recovery on the claims for exemplary damages, if any, against the defendant to an amount not to exceed the greater of:

(A) two times the amount of economic damages plus an amount equal to any noneconomic damages found by the trier of fact, not to exceed $750,000; or

(B) $200,000.

*Id.* § 71.052(c).

Before a court may dismiss a claim under either section 71.052(b) or (c), the defendant must file written stipulations that, with respect to the filing of a claim in another state, the defendant agrees: (1) to toll limitations during the time the plaintiff's claim was pending in Texas; and (2) that the plaintiff may elect that the plaintiff and defendant may use discovery already conducted in the case. *Id.* § 71.052(b), (e), & (f).

**B**

 Unlike sections 71.031 and 71.051, the plain language of section 71.052 makes no distinction between residents and nonresidents at the time of filing. The only mention of residence is located in section 71.052(a)(1), which states that section 71.052 applies only if "the plaintiff was not a resident of this state *at the time the claim arose.*" TEX. CIV. PRAC. & REM.CODE § 71.052(a)(1) (emphasis added). Despite the lack of such a distinction in the statutory language, Plaintiffs cite a number of statements made by the bill's sponsors during floor debates and assert that the Legislature "clearly intended" that section 71.052 should not be applied to any claim filed by a current Texas resident or citizen, and section 71.052 thus discriminates against nonresidents in violation of the Privileges and Immunities Clause. Plaintiffs contend that we are bound to consider the "object sought to be attained" by the Legislature and the legislative history in interpreting the statute, even if the statute is unambiguous on its face. *See* TEX. GOV'T CODE § 311.023.

 When interpreting a statute, we begin with the words of the statute itself, giving words their ordinary meaning. *In re Bay Area Citizens Against Lawsuit Abuse,* 982 S.W.2d 371, 380 (Tex. 1998). We should, if possible, interpret the statute in a manner that avoids constitutional infirmities. *Id.*

Despite statements made by the bill's sponsors, the language of section 71.052 is plain: a plaintiff's residence at the time of filing is simply not a consideration under section 71.052. Had the Legislature intended Texas resident plaintiffs to be immune from dismissal, it could have included such language in section 71.052, as it

did in sections 71.051(e)[11] and 71.031(a)(1); or, it could have made section 71.051(e) applicable to section 71.052 instead of limiting its scope specifically to subsection 71.051(b). Because it did not do so, we conclude that section 71.052 does not discriminate on the basis of residence at the time of filing—a Texas resident's claim is subject to dismissal on exactly the same terms as a nonresident's claim. Such a construction applies the plain wording of the statute, avoids potential constitutional infirmities, and is consistent with the Act's title, which states that it relates to "lawsuits arising outside *or* brought by persons who reside outside of Texas." Act of May 27, 1997, 75th Leg., R.S., ch. 424, 1997 Tex. Gen. Laws 1680, 1680 (emphasis added).

### C

Plaintiffs contend that even if section 71.052 discriminates only on the basis of residence at the time the cause of action arose, such discrimination nevertheless violates the Privileges and Immunities Clause. Owens Corning responds that the state may consider the plaintiff's residence at the time the cause of action accrued in deciding whether to entertain a cause of action arising out of state without running afoul of the Privileges and Immunities Clause.

Owens Corning argues that the Supreme Court's opinion in *Chambers v. Baltimore & Ohio Railroad,* 207 U.S. 142, 28 S.Ct. 34, 52 L.Ed. 143 (1907), is dispositive and establishes that a statute that does not discriminate on the basis of a plaintiff's citizenship or residence at the time of filing does not implicate the Privileges and Immunities Clause. In *Chambers,* the Supreme Court considered a privileges and immunities challenge to an Ohio statute that allowed an action for wrongful death arising in another state only when the deceased was a citizen of Ohio. *Id.* at 147, 28 S.Ct. 34. In other words, Ohio law discriminated "solely on the citizenship of the deceased" rather than that of the par-

ties. *Id.* at 149, 28 S.Ct. 34. The Court noted that the plaintiff would have been denied hearing of the same cause for the same reason had she been a citizen of Ohio. *Id.* at 151, 28 S.Ct. 34. Thus, Owens Corning contends, because Plaintiffs' claims would have been dismissed even if they were citizens of Texas, the Privileges and Immunities Clause is not implicated.

Plaintiffs respond that *Chambers* does not support Owens Corning's position. In support, Plaintiffs point to the Court's discussion of survival causes of action. *See id.* at 150, 28 S.Ct. 34. The Court stated that because a survival action vests originally with the deceased—in contrast to a wrongful death action, which vests originally with the claimant—the denial of a right to maintain a survival action in Ohio "would be based upon the citizenship of that person in whom the right of action originally vested" and it might be necessary to consider whether such a law would violate the Privileges and Immunities Clause. *Id.* Thus, contend Plaintiffs, the statute in *Chambers* was not constitutional because of the *timing* of the discrimination, but because there was no citizenship-based discrimination against the *party* who filed suit. Because section 71.052 discriminates against the party filing suit rather than some other person, Plaintiffs are correct that *Chambers* leaves the question at hand unresolved. Moreover, *Chambers* is further inapposite because it involved citizenship-based discrimination as opposed to residence-based discrimination.

■ Thus, we must determine whether section 71.052 impermissibly discriminates on the basis of a plaintiff's prior residence. Plaintiffs contend that Justice O'Connor's concurring opinion in *Zobel v. Williams,* 457 U.S. 55, 71–81, 102 S.Ct. 2309, 72 L.Ed.2d 672 (1982), supports the conclusion that such discrimination violates the Privileges and Immunities Clause. That case involved Alaska's scheme of distributing its surplus oil-boom wealth to residents

---

11. "The court may not stay or dismiss a plaintiff's claim under Subsection (b) if the plaintiff is a legal resident of this state." Tex. Civ. Prac. & Rem.Code § 71.051(e).

through dividends paid in proportion to duration of residence. The Court invalidated the scheme on equal protection grounds, and Justice O'Connor wrote separately to state her view that the scheme also violated the Privileges and Immunities Clause because it burdened the freedom to travel. *Id.* at 73–74, 102 S.Ct. 2309 (O'Connor, J., concurring). Alaska could have, without violating the Privileges and Immunities Clause, chosen to pay dividends solely to Alaska residents, excluding all nonresidents. The problem arose when Alaska established "degrees of citizenship based on length of residence." *Id.* at 69, 102 S.Ct. 2309 (Brennan, J., concurring). Justice Brennan agreed with Justice O'Connor, stating that

> if each State were free to reward its citizens incrementally for their years of residence, so that a citizen leaving one state would thereby forfeit his accrued seniority, only to have to begin building such seniority again in his new state of residence, then the mobility so essential to the economic progress of our Nation, and so commonly accepted as a fundamental aspect of our social order, would not long survive.

*Id.* at 68, 102 S.Ct. 2309 (Brennan, J., concurring). Plaintiffs contend that section 71.052 similarly burdens the right to travel.

The Supreme Court recently considered the right to travel in *Saenz v. Roe,* —— U.S. ——, 119 S.Ct. 1518, 143 L.Ed.2d 689 (1999). It recognized that the right to travel embraces at least three components: (1) the right of a citizen of one state to enter and leave another state; (2) the right of a citizen of one state to be treated as a welcome visitor rather than an unfriendly alien when temporarily present in the state; and (3) for those travelers who elect to become permanent residents, the right to be treated like other citizens of the state. *Id.* at 1525. The second compo-

nent of the right to travel is located in the Privileges and Immunities Clause of Article IV; the third component is located in the Privileges or Immunities Clause of the Fourteenth Amendment. *Id.* at 1525-1526.

■ In this case, all Plaintiffs are nonresidents of Texas; none has elected to become a Texas resident. Accordingly, only the second component of the right to travel is implicated by their claims. In contrast, *Zobel* involves the third component of the right to travel.[12] The second component of the right to travel requires that nonresidents who enter a state temporarily are entitled to enjoy the privileges and immunities enjoyed by citizens of that state, unless there is a substantial reason for discrimination against the nonresidents. *Id.* at 1525. Because nonresidents are afforded the same rights and treated the same as residents under section 71.052, the statute does not violate the Privileges and Immunities Clause of Article IV.

**D**

■ Plaintiffs also contend that, read in the context of the entire statutory scheme, section 71.052 discriminates on the basis of residence because, even if a Texas resident's claim is dismissed under section 71.052, that Texas resident may simply refile and be exempt from dismissal under sections 71.051 and 71.031(a)(3), whereas a nonresident who refiles will be subject to both sections 71.051 and 71.031(a)(3). Thus, Plaintiffs argue that, "as a practical matter, section 71.052 has no impact on Texas citizens and instead affects only claims brought by citizens of other states." Owens Corning responds that any claim dismissed under section 71.052 could not be refiled in Texas. Owens Corning argues that there is no hint that the Legislature contemplated such refiling, and, in fact, allowing dismissed plaintiffs to refile

12. With regard to persons who elect to become Texas residents, the third component of the right to travel is implicated because new Texas residents may be denied access to Texas courts for claims that arose during their resi-

dence in another state. As noted, the right to travel in that case is located in the Fourteenth Amendment. *See Saenz,* 119 S.Ct. at 1526. Plaintiffs have not raised this challenge to the statute.

would run counter to legislative intent because it would provide plaintiffs "a further opportunity to abuse the system and muck up the courts." We agree with the Plaintiffs that dismissed claims may be refiled in Texas courts.

▬▬▬ Nothing in the statutory language or the legislative history indicates that plaintiffs who are dismissed under section 71.052 may not refile their claims in Texas. Section 71.052 provides that a court may not dismiss a claim until a defendant files certain stipulations regarding limitations and use of previously conducted discovery with respect to a new claim commenced in another state. Although a plaintiff gets the benefit of these stipulations only if he refiles his claim in another state, nothing in the statute prevents a plaintiff from refiling in Texas. This construction is also supported by the legislative history. The House Research Organization's bill analysis states that Senate Bill 220 "would simply apply the law that would be applied to all plaintiffs after enactment of this legislation to those plaintiffs that have commenced actions [on or after January 1, 1997]." HOUSE RESEARCH ORG., BILL ANALYSIS, Tex. S.B. 220, 75th Leg., R.S. (1997). The "law that would be applied to all plaintiffs after enactment of this legislation," including the borrowing statute, could not be applied to the dismissed claims unless they are refiled in Texas courts. Accordingly, we conclude that a plaintiff whose claim is dismissed under section 71.052(b) or (c) may refile his claim in a Texas court, subject to sections 71.051 and 71.031(a)(3).[13]

Allowing plaintiffs dismissed under sections 71.052(b) and (c) to refile in Texas does not violate the Privileges and Immunities Clause. Although nonresidents will be subject to sections 71.051 and 71.031(a)(3) on refiling, while Texas residents will not, we have already held that applying these provisions only to nonresidents does not violate the Privileges and Immunities Clause. And, with regard to plaintiffs who choose the punitive damages cap rather than dismissal under section 71.052(c), both residents and nonresidents are treated alike.

For these reasons, we hold that sections 71.052(b) and 71.052(c) do not violate the Privileges and Immunities Clause of Article IV of the United States Constitution. Plaintiffs assert no challenge to subsection 71.052(c) other than on Privileges and Immunities grounds; however, they make additional challenges to section 71.052(b). We now address those challenges.

### E

▬▬ Plaintiffs contend that section 71.052(b) violates the Equal Protection provisions of the Texas and United States Constitutions. U.S. CONST. amend. XIV; TEX. CONST. art. I, § 3. Because Texas and United States equal protection analysis is substantially similar, we will not conduct separate analyses. See Trinity River Auth. v. URS Consultants, Inc., 889 S.W.2d 259, 264 (Tex.1994). Generally, if interests other than fundamental rights or suspect classifications are affected by legislation, the statutory classification must only be rationally related to a legitimate state interest in order to survive an equal protection challenge. Barshop v. Medina County Underground Water Conservation Dist., 925 S.W.2d 618, 631 (Tex.1996). Plaintiffs make no claim that section 71.052's classifications distinguish between classes on a suspect basis, nor do they argue that the legislation affects their fundamental rights. Applying rational basis review, we hold that the Legislature's clas-

13. Although the statute does not say so, any dismissal under section 71.052 must be without prejudice in order to allow plaintiffs to refile their claims in Texas or another forum. And, for purposes of limitations on refiling in Texas, the statute of limitations is tolled during the period when the claim was pending.

See *Flatonia State Bank v. Southwestern Life Ins. Co.*, 133 Tex. 243, 127 S.W.2d 188, 192–93 (1939), *set aside on other grounds*, 133 Tex. 243, 128 S.W.2d 790 (1939); *Irwin v. Basham*, 507 S.W.2d 621, 625 (Tex.Civ.App.—Dallas 1974, writ ref'd n.r.e.).

sification scheme is rationally related to a legitimate state interest.

Early versions of section 71.052 provided for dismissal of a pending asbestos claim if the claim was barred by limitations in the state where the cause of action arose and the claim was not barred by limitations in another forum in which the defendant was subject to personal jurisdiction, unless the claim was already set for trial before January 1, 1998. While the legislation was pending, the Legislature was aware that thousands of out-of-state asbestos claims were being filed in Texas courts. For example, there was evidence that almost 4,900 new claims were filed in Texas from January 1 through April 4, 1997. The Legislature knew from past experience with the 1995 tort reform that many more such filings could be expected before Senate Bill 220 would take effect. In response, the Legislature amended the proposed statute to include the current version of section 71.052, which provides for mandatory dismissal—subject to certain procedural safeguards—and created the date classifications at issue.

 We have recognized that it is rational for a new law to become effective immediately so that it is not undermined during the period between its passage and its effective date. *See Barshop*, 925 S.W.2d at 632. It is also well recognized that retroactive application may "prevent circumvention of a new statute in the interval immediately preceding its passage." *Landgraf v. USI Film Prods.*, 511 U.S. 244, 267–68, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994).[14] But here the Legislature went a step further: instead of retroactively applying the new law, it simply dismissed all out-of-state asbestos claims filed within the five-month period preceding the law, without regard to whether the claims would have survived dismissal under the new law. We must determine if that action has a rational basis. In so doing, we must uphold the law if we can conceive of any rational basis for the Legislature's

action. *See Sullivan v. Stroop*, 496 U.S. 478, 485, 110 S.Ct. 2499, 110 L.Ed.2d 438 (1990). It does not matter whether the justifications courts may hypothesize as a rational basis in fact underlay the legislative decision. *See Flemming v. Nestor*, 363 U.S. 603, 612, 80 S.Ct. 1367, 4 L.Ed.2d 1435 (1960).

Plaintiffs admit that, as a practical matter, dismissal and refiling effectuates a retroactive application of sections 71.051 and 71.031(a)(3). Plaintiffs argue that the only members of the class that are ultimately blocked by the mandatory dismissal provision are Alabama citizens whose claims will not survive application of the new borrowing statute. Plaintiffs suggest that many plaintiffs dismissed under section 71.052(b) will simply refile their cases in Texas. Although some of these plaintiffs will not survive application of section 71.051, plaintiffs contend that many will, and, although they will have "unnecessarily and irrationally suffered from the classification by having to pay an additional filing fee and by losing their original place in the trial queue, their cases will remain in Texas." In contrast, certain Alabama plaintiffs such as Moore cannot refile because their refiled claims will be barred by the borrowing statute. Thus, plaintiffs contend that, "as a practical matter, the only purpose furthered by ... the mandatory dismissal of pending claims is the illegitimate goal of retroactively shortening the statute of limitations applicable to Alabama citizens who filed between January 1 and May 29, 1997." Plaintiffs contend that such a purpose cannot satisfy the rational basis test because the goal—application of the borrowing statute to bar pending claims—is itself unconstitutional.

As we have already held, applying the borrowing statute to bar pending claims is not unconstitutionally retroactive. Thus, the question to be decided is whether there is a rational basis for the Legislature to require mandatory dismissal of claims in

---

**14.** In fact, that is the result of applying section 71.052(c)—it retroactively applies the punitive damages cap to claims filed in the month preceding its passage.

order to effect a retroactive application of the borrowing statute, rather than simply providing that it (and section 71.051) be applied retroactively. We note that, although the trial court made certain findings [15] that disagreed with the Legislature's fact findings, these findings play a limited role in rational basis review. *Texas Workers' Compensation Comm'n v. Garcia*, 893 S.W.2d 504, 520 (Tex.1995) (" 'If under any possible state of facts an act would be constitutional, the courts are bound to presume such facts exist; and therefore the courts will not make a separate investigation of the facts, or attempt to decide whether the legislature has reached a correct conclusion with respect to them.' ") (quoting *Corsicana Cotton Mills v. Sheppard*, 123 Tex. 352, 71 S.W.2d 247, 250 (1934)).

▇ Plaintiffs argue that there is no rational basis for treating similarly situated plaintiffs differently based on the time of filing suit. *See Binney v. Long*, 299 U.S. 280, 292, 57 S.Ct. 206, 81 L.Ed. 239 (1936) (classifications of similarly situated remaindermen for tax purposes based solely on time of conveyance held to violate the Equal Protection Clause). Plaintiffs contend that, with regard to nonresident plaintiffs, the Legislature cannot rationally justify treating pending claims filed between January 1, 1997 and May 29, 1997, which will be retroactively dismissed under 71.052(b) on defendant's motion, more harshly than claims filed on or after May 29, 1997, which will be dismissed only if the defendant satisfies its burden of proving the forum non conveniens factors under section 71.051, including the existence of an alternative forum. In addition, Plaintiffs contend that the classifications violate equal protection principles with regard to Texas residents: A Texas resident who files suit on May 28, 1997 and whose claims are pending on May 29, 1997 is subject to mandatory dismissal under sec-

tion 71.052(b), whereas a Texas resident who files suit on May 29, 1997 is immune from dismissal under section 71.051. Plaintiffs contend this disparity in treatment cannot rationally be justified. To the contrary, we conclude that requiring dismissal of claims filed between January 1, 1997 and May 29, 1997, rather than applying the new law to those claims, is rationally related to a legitimate state interest.

The Legislature reasonably believed that Texas's resources were better spent on cases having a more substantial relation to Texas, and that Texas residents were being denied access to their own courts because of a backlog of cases the Legislature reasonably believed should be litigated elsewhere. The purpose of Senate Bill 220 was to remove the asbestos exception from section 71.051 and to discourage forum shopping by all out-of-state plaintiffs with claims arising in another state by adopting the borrowing statute. Certainly, these are legitimate state interests.

To further these goals, the dismissal provisions in section 71.052 attempt to relieve the burden that asbestos claims have placed on Texas courts, while attempting to treat pending claims fairly:

[Senate Bill 220] would not affect any asbestos-related cases commenced in Texas by out-of-state plaintiffs before August 1, 1995. Any cases commenced before that date would likely be far enough along in the course of the case that they should be making their way out of Texas courts very soon.

Claims of asbestos-related plaintiffs who have filed suit from August 1, 1995, to January 1, 1997, the bulk of pending asbestos-related [litigation], would be allowed to remain in Texas courts only if they agreed to have punitive damages ... limited.... Such a limitation would be an incentive for these plaintiffs to

---

15. For example, the trial court held that there was no evidence that the out-of-state asbestos claims were preventing Texas plaintiffs from reaching their day in court, and noted that the Texas Judicial Council's Annual Report

for Fiscal Year 1996 indicated that Texas courts were, on the whole, keeping up with their backlog notwithstanding the out-of-state asbestos claims.

seek out another forum in which to try their cases. While it would encourage plaintiffs to seek out other forums, if such forums were not available, the plaintiffs could still use Texas courts to pursue their claims.... [And][s]uch a limitation could likely encourage settlement of asbestos-related claims ... because it would establish limits on how high punitive damages could go....

The only asbestos-related plaintiffs whose cases would likely be barred from being brought in Texas courts are those that have been commenced this year, after plaintiff's attorney's [*sic*] were placed on notice that the Legislature was considering limiting such suits. That notice encouraged a significant amount of cases to be filed in the hopes of "getting in under the wire" and ensuring the out-of-state plaintiff had a place in line in Texas courts. [Senate Bill 220] would simply apply the law that would be applied to all plaintiffs after enactment of this legislation to those plaintiffs that have commenced actions [after January 1, 1997]. Unless a claim would have been proper in the plaintiff's own jurisdiction, Texas courts would not be burdened [with] such claims simply because Texas calculates its statutes of limitations differently.

HOUSE RESEARCH ORG., BILL ANALYSIS, Tex. S.B. 220, 75th Leg., R.S. (1997). Thus, the Legislature had a rational basis for choosing the dates that it did.

In addition, there is a rational basis for providing for dismissal of all claims filed between January 1, 1997 and May 29, 1997. If the Legislature had provided that sections 71.031(a)(3) and 71.051 applied retroactively to these claims, significant Texas court resources would still have to be expended in determining which claims must be dismissed under those provisions. The goals of the Act would be undermined because significant court resources would have to be expended on claims that the Legislature reasonably believed should be litigated elsewhere, causing claims that the Legislature determined were properly in Texas to be further delayed. By providing

for mandatory dismissal instead, these claims could be removed from Texas courts with a minimal expenditure of resources—the court need only determine if the requisite stipulations have been filed. Claims that would not have survived a retroactive application of section 71.031(a)(3) are dismissed at minimal cost, and will not be refiled. Nonresident plaintiffs' claims that would survive section 71.031(a)(3) can be refiled in Texas if the plaintiff chooses. However, requiring the defendant to file written stipulations agreeing to toll limitations and allowing plaintiffs to use any discovery already conducted if the claim is refiled in another jurisdiction provide additional incentives for plaintiffs to refile in another forum. Although some nonresident plaintiffs and Texas residents who refile in Texas will have lost their filing fees, previous discovery, and their places in line, the Legislature's chosen classifications need not be made with mathematical exactitude, and any overinclusiveness is not so great as to render the classifications irrational or arbitrary. Accordingly, we hold that section 71.052(b) does not violate the Equal Protection Clauses of the Texas or United States Constitutions.

### F

 Plaintiffs also contend that the Act is a special law in violation of Article III, Section 56 of the Texas Constitution. A special law is limited to a particular class of persons distinguished by some characteristic other than geography. *Texas Boll Weevil Eradication Found., Inc. v. Lewellen*, 952 S.W.2d 454, 465 (Tex.1997). Legislation does not violate Article III, Section 56 as long as there is a reasonable basis for its classifications. *Id.* For the reasons explained above, the Act satisfies this requirement. *See id.; Maple Run at Austin Mun. Util. Dist. v. Monaghan*, 931 S.W.2d 941, 945 (Tex.1996).

\* \* \* \* \*

In sum, we affirm the trial court's judgment that section 71.051 does not violate

the Privileges and Immunities Clause. Because we hold that sections 71.031(a)(3), 71.052(b), and 71.052(c) are constitutional with respect to the· challenges asserted by Plaintiffs, we reverse the trial court's judgment to the contrary, and instruct the court to vacate its orders enjoining Defendants from attempting to enforce those provisions.

Justice HANKINSON did not participate in the decision.