**Christine Hazel TULLIS, Appellant,**

v.

**GEORGIA–PACIFIC CORPORATION,**
**Appellee.**

No. 2–98–351–CV.

Court of Appeals of Texas,
Fort Worth.

Sept. 28, 2000.

Bourland, Kirkman, Seidler & Evans, L.L.P., David L. Evans, Thomas M. Michel, Fort Worth, for Appellant.

Dehay & Elliston, L.L.P., Mel D. Bailey Dallas, for Appellee.

Panel B: DAUPHINOT, HOLMAN, and GARDNER, JJ.

## OPINION

GARDNER, Justice.

### I. Introduction

This appeal is from an order dismissing a personal injury suit under the Texas

forum non conveniens statute and the Texas borrowing statute. Presenting five issues, Appellant Christine Hazel Tullis contends the trial court abused its discretion in dismissing her suit against Appellee Georgia–Pacific Corporation. Tullis contends that: (1) Georgia–Pacific failed to establish Tullis's status as a non-resident of Texas, which is necessary to invoke either the forum non conveniens statute or to apply the Tennessee one-year statute of limitations pursuant to the borrowing statute; (2) the forum non conveniens statute controls over the borrowing statute; (3) Georgia–Pacific failed to present legally or factually sufficient evidence to support the trial court's findings of fact; (4) Georgia–Pacific failed to meet its burden of proof as to the elements of the doctrine of forum non conveniens; and (5) the trial court failed to condition its dismissal on an agreement by Georgia–Pacific to waive the defense of limitations under the law of Tennessee. We reverse and remand.

## II. FACTUAL AND PROCEDURAL BACKGROUND

Tullis filed this suit on March 17, 1998, alleging she sustained personal injuries on or about March 19, 1996, as the result of an automobile collision in Memphis, Tennessee, involving a truck owned by Georgia–Pacific. She named Georgia–Pacific as a defendant, alleging that company was a Georgia corporation authorized to do business in Texas. She also named the driver of the truck, Michael Anthony DeGraffin Reid, as a defendant, alleging he was a resident of Tennessee at the time of the accident.

Georgia–Pacific filed a motion to dismiss based on forum non conveniens, a motion to transfer venue, special exceptions, and an answer. The entirety of Georgia–Pacific's motion to dismiss consisted of the following:

Defendant moves to dismiss this case upon forum non conveniens. More specifically, the accident forming the basis of this cause of action occurred in Tennessee. Consequently, Tennessee courts constitute the appropriate forum for litigation of the issues asserted before this Court. Maintenance of this action in Tarrant County would work a substantial injustice to Georgia–Pacific. Dismissal based upon forum non conveniens will not result in duplication or proliferation of this litigation.

Georgia–Pacific subsequently filed a supplemental motion to dismiss based on the Texas borrowing statute, section 71.031(a)(3) of the Texas Civil Practice and Remedies Code. Under that statute, a non-resident plaintiff whose cause of action arose in another state must file suit within the period required by Texas law, as well as any shorter period required by the other state's law. TEX. CIV. PRAC. & REM. CODE ANN. § 71.031(a)(3) (Vernon Supp.2000). Georgia–Pacific's supplemental motion sought dismissal on the ground that because the accident occurred in Tennessee on March 19, 1996, Tullis's cause of action was barred by the one-year statute of limitations in Tennessee for personal injury claims. *See* TENN. CODE ANN. § 28-3-104 (1997).

Following a hearing and consideration of post-hearing evidence, the trial court granted Georgia–Pacific's motion to dismiss and filed the following findings of fact and conclusions of law:

### FINDINGS OF FACT

1. On or about March 19, 1996, Plaintiff Christine Tullis was involved in a motor vehicle collision in Memphis, Shelby County, Tennessee with Defendant driver Michael Anthony DeGraffin Reid.

2. Plaintiff is a resident of Colorado Springs, Colorado.

3. Defendant Georgia–Pacific is a Georgia Corporation registered to do business in Tennessee, with a registered agent located in Tennessee and principle [sic] places of business located in Tennessee, as alleged in Plaintiff's Original Petition.

4. Defendant Michael Anthony DeGraffin Reid is an individual who is a resident of Memphis, Shelby County, Tennessee, as alleged in Plaintiff's Original Petition.

5. Plaintiff filed her Original Petition in Tarrant County, Texas on or about March 17, 1998.

6. None of the facts giving rise to this cause of action occurred in the state of Texas.

7. Defendant Reid has not made an appearance before this Court and is not subject to this Court's jurisdiction.

### CONCLUSIONS OF LAW

1. The State of Tennessee is an alternate forum in which this claim or action may be tried.

2. Anthony DeGraffin Reid is within the jurisdiction of Tennessee only.

3. The entire case and all the parties are within the jurisdiction of Tennessee and this Court lacks jurisdiction over defendant Anthony Michael DeGraffin Reid.

4. Georgia–Pacific has sufficient minimum contacts with Tennessee to be amenable to process in that state since the accident formed [sic] the basis of this lawsuit occurred in Tennessee.

5. The alternate forum provides an adequate remedy pursuant to the laws of Tennessee.

6. Maintenance of this action in the Courts of this state would work a substantial injustice to the Defendant, Georgia–Pacific Corporation.

7. The forum state and the governing law in this case is Tennessee.

8. Tennessee, the alternate forum, can exercise jurisdiction over Defendants Anthony Michael DeGraffin Reid and Georgia–Pacific Corporation since the accident forming the cause of action occurred in Tennessee.

9. The interests of the Parties and the State predominate in favor of the action being brought in Tennessee.

10. The dismissal of this case in Texas will not result in unreasonable duplication or proliferation of the litigation.

### III. STANDARD OF REVIEW

Appellate courts review dismissals based on forum non conveniens under an abuse of discretion standard. *See, e.g., Adams v. Baxter Healthcare Corp.,* 998 S.W.2d 349, 356 (Tex.App.—Austin 1999, no pet.); *Baker v. Bell Helicopter Textron, Inc.,* 985 S.W.2d 272, 277 (Tex.App.—Fort Worth 1999, pet. denied). The trial court abuses its discretion when it acts without reference to any guiding rules or principles. *See Goode v. Shoukfeh,* 943 S.W.2d 441, 446 (Tex.1997); *Downer v. Aquamarine Operators, Inc.,* 701 S.W.2d 238, 241–42 (Tex.1985), *cert. denied,* 476 U.S. 1159, 106 S.Ct. 2279, 90 L.Ed.2d 721 (1986). However, under the abuse of discretion standard, legal and factual sufficiency of evidence to support findings underlying its decision are relevant factors in assessing whether the trial court abused its discretion. *See Baker,* 985 S.W.2d at 277.

In determining a legal sufficiency issue, we are to consider all of the evidence in

the light most favorable to the party in whose favor the judgment has been rendered, and to indulge every reasonable inference from the evidence in that party's favor. *See Formosa Plastics Corp. v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 48 (Tex.1998) (op. on reh'g); *Merrell Dow Pharm., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex.1997), *cert. denied*, 523 U.S. 1119, 118 S.Ct. 1799, 140 L.Ed.2d 939 (1998); *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660, 661 (1951). If there is more than a scintilla of such evidence to support the finding, the claim is sufficient as a matter of law. *See Formosa Plastics Corp.*, 960 S.W.2d at 48; *Leitch v. Hornsby*, 935 S.W.2d 114, 118 (Tex.1996).

A legal sufficiency issue may only be sustained when the record discloses one of the following: (1) a complete absence of evidence of a vital fact; (2) the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla of evidence; or (4) the evidence establishes conclusively the opposite of a vital fact. *See Merrell Dow Pharm.*, 953 S.W.2d at 711 (citing Robert W. Calvert, *"No Evidence" and "Insufficient Evidence" Points of Error*, 38 TEX. L. REV. 361, 362–63 (1960)). There is some evidence when the proof supplies a reasonable basis on which reasonable minds may reach different conclusions about the existence of the vital fact. *See Orozco v. Sander*, 824 S.W.2d 555, 556 (Tex.1992).

An assertion that the evidence is "insufficient" to support a fact finding means that the evidence supporting the finding is so weak or the evidence to the contrary is so overwhelming that the answer should be set aside and a new trial ordered. *See Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex. 1965). We are required to consider all of the evidence in the case in making this determination. *See Mar. Overseas Corp. v. Ellis*, 971 S.W.2d 402, 406 (Tex.), *cert. denied*, 525 U.S. 1017, 119 S.Ct. 541, 142 L.Ed.2d 450 (1998).

## IV. APPLICABLE STATUTES

 Forum non conveniens is an equitable doctrine exercised by courts to resist imposition of an inconvenient jurisdiction on a litigant, even if jurisdiction is supported by the long-arm statute and would not violate due process. *See Baker*, 985 S.W.2d at 274. Forum non conveniens was traditionally applied in Texas as a common law rule in all types of cases. *See Dow Chem. Co. v. Alfaro*, 786 S.W.2d 674, 676–78 (Tex.1990), *cert. denied*, 498 U.S. 1024, 111 S.Ct. 671, 112 L.Ed.2d 663 (1991). However, in *Alfaro*, the Supreme Court of Texas ruled that the version of section 71.031 of the Texas Civil Practice and Remedies Code then in effect gave an absolute right to non-residents to bring suit in Texas courts for injuries and wrongful death occurring in other states and statutorily abolished the doctrine of forum non conveniens in those types of cases.[1] *Id.* at 679.

---

1. The version of Section 71.031 in effect in 1991 provided:

 **§ 71.031 Act or Omission Occurring Out of State**

 (a) An action for damages for the death or personal injury of a citizen of this state, of the United States, or of a foreign country may be enforced in the courts of this state, although the wrongful act, neglect or default causing the death or

 injury takes place in a foreign state or country, if: (1) a law of the foreign state or country or of this state gives a right to maintain an action for the death or injury; (2) the action is begun in this state within the time provided by the laws of this state for beginning the action; and (3) in the case of a citizen of a foreign country, the country has equal

In 1993, the 73rd Legislature responded to the decision in *Alfaro* by enacting section 71.051 of the Texas Civil Practice and Remedies Code, effectively reinstating the doctrine of forum non conveniens in suits involving personal injury and death.[2] *See* HOUSE COMM. ON CIVIL PRACTICES BILL ANALYSIS, Tex. S.B. 220, 75th Leg., R.S. (May 23, 1997) (discussing history of section 71.051). Through section 71.051, the legislature provided a procedural framework, as well as substantive elements that must be met, for a defendant to obtain a dismissal based on forum non conveniens.[3] *See* TEX. CIV. PRAC. & REM. CODE ANN. § 71.051 (Vernon Supp.2000). Section 71.051 now provides the forum non conveniens law in Texas governing all actions for personal injury or wrongful death. *See Owens Corning v. Carter*, 997 S.W.2d 560, 564 (Tex.), *cert. denied*, 528 U.S. 1005, 120 S.Ct. 500, 145 L.Ed.2d 386 (1999).

In 1997, the legislature enacted Senate Bill 220 to address concerns that Texas courts were becoming crowded by personal injury suits brought by non-resident plaintiffs. *See* HOUSE COMM. ON CIVIL PRACTICES, BILL ANALYSIS, Tex. S.B. 220. Effective May, 1997, Senate Bill 220 amended section 71.051 in a number of respects and added a new section 71.052 that specifically addressed asbestos-related claims of non-residents brought in Texas courts.[4] *See id.*

As a further forum shopping deterrent, Senate Bill 220 amended section 71.031 by adding a new subsection. Subsection (a)(3) of section 71.031 now "borrows" the statute of limitations of the state where the cause of action arose with respect to a non-resident plaintiff. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 71.031(a)(3); *Owens Corning*, 997 S.W.2d at 566. A non-resident plaintiff whose cause of action for personal injury or wrongful death accrued in another state with a shorter statute of limitations than Texas's must file within the limitations period imposed both by Texas law and by that state's law. *See Owens Corning*, 997 S.W.2d at 566. Thus, the legislature sought to remedy the problem that Texas had become a popular forum for plaintiffs whose claims were time-barred by shorter statutes of limitations in the states where those claims arose. *See id.* at 574.

## V. THE BORROWING STATUTE

The borrowing statute, added as subsection (a)(3) to section 71.031 in 1997, reads, in pertinent part, as follows:

> treaty rights with the United States on behalf of its citizens.
> (b) All matters pertaining to procedure in the prosecution or maintenance of the action in the courts of this state are governed by the law of this state.
> (c) The court shall apply the rules of substantive law that are appropriate under the facts of the case.
>
> Act of May 17, 1985, 69th Leg., 1st R.S., ch. 959, § 1, 1985 Tex. Gen. Laws 3292, 3297, *amended by* Act of May 24, 1997, 75th Leg., R.S., ch. 424, § 3, 1997 Tex. Gen. Laws 1680, 1683 (current version at TEX. CIV. PRAC. & REM. CODE ANN. § 71.031).

**2.** Act of Feb. 23, 1993, 73rd Leg., R.S., ch. 4, § 1, 1993 Tex. Gen. Laws 10, 10, *amended by* Act of May 24, 1995, 74th Leg., R.S., ch. 567,

§ 1, 1995 Tex. Gen. Laws 3363, 3363, *amended by* Act of May 24, 1997, 75th Leg., R.S., ch. 424, § 1, 1997 Tex. Gen. Laws 1680, 1680 (current version at TEX. CIV. PRAC. & REM. CODE ANN. § 71.051).

**3.** *See generally*, Carl Christopher Scherz, *Section 71.051 of the Texas Civil Practice and Remedies Code—The Texas Legislature's Answer to ALFARO: Forum Non Conveniens in Personal Injury and Wrongful Death Litigation*, 46 BAYLOR L. REV. 99, 122–34 (1994).

**4.** *See* TEX. CIV. PRAC. & REM. CODE ANN. § 71.031, 71.051, 71.052 (Vernon Supp.2000); *added by* Act of May 24, 1997, 75th Leg. R.S., Ch. 424, §§ 1–3, 1997 Tex. Gen. Laws 1680–83.

(a) An action for damages for the death or personal injury of a citizen of this state, of the United States, or of a foreign country may be enforced in the courts of this state, although the wrongful act, neglect or default causing the death or injury takes place in a foreign state or country, if:

. . . .

(3) for a resident of a foreign state or country, the action is begun in this state within the time provided by the laws of the foreign state or country in which the wrongful act, neglect or default took place

TEX. CIV. PRAC. & REM. CODE § 71.031(a)(3).

■ Tullis first contends Georgia–Pacific failed to plead that Tullis was a non-resident of Texas when her cause of action accrued or when she filed her suit. She contends that this pleading requirement is essential to obtain a dismissal under section 71.031(a)(3), the section that is relied upon by Georgia–Pacific in its supplemental motion to dismiss. The only mention of Tullis's residency by Georgia–Pacific is in its Reply to Plaintiff's Brief in Support of Motion to Dismiss filed after the hearing on the motion. In that reply, Georgia–Pacific asserted only that Tullis "is currently a resident of Colorado Springs, Colorado." Tullis made no complaint in the trial court by any timely request, objection, or motion about a pleading defect by Georgia–Pacific. Therefore, her complaint about pleading deficiencies regarding residency is not preserved for appeal. *See* TEX. R. APP. P. 33.1(a); TEX. R. CIV. P. 90.

■ Tullis next asserts that there is no evidence that she was a non-resident of Texas at the time her cause of action accrued or at the time she filed suit, and that the trial court's finding that she "is a resident of Colorado Springs, Colorado" will not support the judgment of dismissal based on the borrowing statute. Tullis claims the critical time for determining her residency for purposes of the borrowing statute is when her cause of action accrued. Tullis alleged in her original petition that she was a resident of Texas when her cause of action accrued in Tennessee. In opposition to the motion to dismiss, Tullis submitted an affidavit stating that she was raised in Tarrant County, Texas; that she was a resident of this state when her cause of action accrued; that she subsequently moved to Colorado to accept employment; and that it was her intention to return to Texas if she quit or lost her job.

Georgia–Pacific submitted no evidence controverting Tullis's affidavit establishing her Texas residency at the time the cause of action accrued. The only evidence offered by Georgia–Pacific was attached to its reply filed after the hearing. That evidence consisted of Tullis's answers to interrogatories dated April 24, 1998, in which she listed a Colorado address and a Colorado driver's license number existing at the date of her answers, after suit was filed.

Tullis contends that evidence of non-residency at a time after suit was filed is not determinative under the Texas borrowing statute. We agree. To read that statute as turning on a plaintiff's non-residency in Texas after suit is filed would lead to the absurd result of subjecting Texas plaintiffs to dismissal of their lawsuits if they leave the state after filing suit to establish a residence elsewhere. Moreover, such an interpretation would also permit plaintiffs to avoid the borrowing statute by simply moving to Texas after suit is filed, thereby defeating a purpose of the statute, which is to avoid forum shopping.

We decline to interpret the borrowing statute to be triggered by a plaintiff's non-

residency at a time after suit is filed. The evidence of Tullis's residence in Colorado after filing suit does not support application of the Tennessee one-year statute of limitations under the Texas borrowing statute to bar Tullis's claim. For the same reason, the finding of fact that Tullis "is" a resident of Colorado does not support the judgment of dismissal.

Georgia–Pacific argues that the borrowing statute nevertheless applies because Tullis was a non-resident of Texas at the time she filed her suit. Georgia–Pacific contends that its evidence supports dismissal under this interpretation of the statute because an inference may be drawn from Tullis's possession of a Colorado driver's license at the time of her answers to interrogatories that she was residing in Colorado when she filed the suit. It is unnecessary to determine whether such an inference is either permissible or legally sufficient to establish non-residency when suit was filed. We disagree that the borrowing statute is invoked by a plaintiff's non-residency at the time of filing, where that plaintiff was a Texas resident when the out-of-state cause of action accrued.

Section 71.031(a)(3) says nothing about the time of filing suit. In construing a statute, our objective is to determine and give effect to the legislature's intent. *See Albertson's, Inc. v. Sinclair,* 984 S.W.2d 958, 961 (Tex.1999). In determining legislative intent, we look to the language of the statute, legislative history, the nature and object sought to be obtained, and the consequences that would follow from alternate constructions. *See In re BACALA,* 982 S.W.2d 371, 380 (Tex.1998, orig.proceeding); *see also* Tex. Gov't Code Ann. § 312.005 (Vernon 1998) ("In interpreting a statute, a court shall ... consider at all times the old law, the evil, and the remedy.").

The Supreme Court of Texas recently traced the rather convoluted history of section 71.031. *See Dubai Petroleum Co. v. Kazi,* 12 S.W.3d 71, 76–78, & nn. 5–7 (Tex.2000). The original version was enacted in 1913 to allow Texas courts to hear wrongful death or personal injury actions for injuries occurring outside the state.[5] *See id.* at 77. As described in *Dubai,* "[t]his statute allowed suits *for out-of-state injuries to Texans* or citizens of countries having equal treaty rights with the United States if the law of the place of injury provided for such an action and the action was filed within the limitations period provided by Texas law." *Id.* (emphasis added). In 1917, a similar statute was passed to allow suits to be brought in Texas for out-of-state injuries to citizens of other states.[6] *See id.*

In 1925, the two statutes were combined. *See* Tex. Rev. Stat. art. 4678 (1925). In 1975, article 4678 was amended to allow an action if permitted either by Texas law or by the law of the place of the injury.[7] *See Dubai,* 12 S.W.3d at 77. In 1985, article 4678 was recodified as section 71.031.[8] *See id.* In 1997, the legislature added the requirement that actions for out-of-state injuries to non-residents be brought within the limitations period provided by the place of the injury. Act of May 24, 1997, 75th Leg., R.S., ch. 424, § 3, 1997 Tex. Gen. Laws 1680, 1683 (codified at Tex. Civ. Prac. & Rem Code Ann. § 71.031(a)(3)).

---

5. *See* Act of April 1, 1913, 33rd Leg., R.S., ch. 161, § 1, 1913 Tex. Gen. Laws 338, 338.

6. *See* Act of March 30, 1917, 35th Leg., R.S., ch. 156, § 1, 1917 Tex. Gen. Laws 365, 365.

7. *See* Act of May 29, 1975, 64th Leg., R.S., ch. 530, § 2, 1975 Tex. Gen. Laws 1381, 1382.

8. *See* Act of May 17, 1985, 69th Leg., 1st R.S., ch. 959, § 1, 1985 Tex. Gen. Laws 3242, 3297.

As explained in *Dubai*, the main purpose of the original statute "was to allow Texas citizens to sue in Texas for injuries occurring outside Texas." *Dubai*, 12 S.W.3d at 78 (citing *Alfaro*, 786 S.W.2d at 692 (Gonzalez, J., dissenting)); *see also Marmon v. Mustang Aviation, Inc.*, 430 S.W.2d 182, 185 (Tex.1968) (explaining purpose). That this was the Act's main purpose is apparent from its title, expressly stating that the Act was "for the protection of persons of this State who may be injured in a foreign country ..." and its emergency clause, stating that the impetus for the statute was "[t]he fact that there is now no law permitting citizens of this State who receive injuries in a foreign country from bringing an action for said injuries under the laws of this State ...." *Dubai*, 12 S.W.3d at 78 (quoting Act of April 1, 1913, 33rd Leg., R.S., ch. 161, § 1, 1913 Tex. Gen. Laws 338, 338–39).

The introductory paragraph of section 71.031 retains the gist of the wording of the 1913 statute in providing that "[a]n action *for damages for the death or personal injury of a citizen of this state* ... may be enforced in the courts of this state, although the wrongful act, neglect, or default causing the death or injury takes place in a foreign state or country ...." TEX. CIV. PRAC. & REM. CODE ANN. § 71.031 (emphasis added). That citizenship status is to be viewed as of the time of the death or injury seems self-evident from the statute's history and wording.

In the years since 1913, it does not appear that any Texas court has been called upon to construe the statutory language otherwise. The question remains as to whether a different interpretation is called for today by the addition of subsection (a)(3) in 1997, requiring that "for a resident of a foreign state or country, the action [must be] begun in this state within the time provided by the laws of the for-

eign state or country in which the wrongful act, neglect or default took place." TEX. CIV. PRAC. & REM. CODE ANN. § 71.031(a)(3).

Subsection (a)(3), called a "borrowing statute" because it borrows the statute of limitations of the state where the injury occurred, is "essentially a codified choice-of-law rule." *Owens Corning*, 997 S.W.2d at 564, 573; *see also Sautter v. Interstate Power Co.*, 567 N.W.2d 755, 760 n. 2 (Minn. Ct.App.1997) (noting that term "borrowing statute" is defined as the law of one state or jurisdiction used by another state in deciding conflicts questions involved in choice of law, citing BLACK'S LAW DICTIONARY 97 (5th ed.1983)); *Miller v. Stauffer Chem. Co.*, 99 Idaho 299, 581 P.2d 345, 349 (1978) (describing borrowing statute as "choice of law" rule).

Most other states have borrowing statutes. *See Owens Corning*, 997 S.W.2d at 574; *see generally*, Ibrahim J. Wani, *Borrowing Statutes, Statutes of Limitations and Modern Choice of Law*, 57 UMKC L. REV. 681, 715 & n. 38 (1989). Most of those statutes consider residency a factor. *See Miller v. Lockett*, 98 Ill.2d 478, 75 Ill.Dec. 224, 457 N.E.2d 14, 17–18 (1983); *see generally*, J. Ester, *Borrowing Statutes of Limitation and Conflict of Laws*, 15 U. FLA. L. REV. 33, 69, 80–81 (1962) (noting that all but eight states' borrowing statutes have express provisions relating to the plaintiff's or the defendant's residence); Donna Mae Endreson, *Wisconsin's Borrowing Statute: Did We Shortchange Ourselves?*, 70 MARQ. L. REV. 120, 123 n. 23 (1986). Some provide an express exception for resident plaintiffs. *See Miller v. Lockett*, 75 Ill.Dec. 224, 457 N.E.2d at 18 (citing, *e.g.*, CAL. [CIV. PROC.] CODE § 361 (West 1982); IDAHO CODE § 5239 (1979); N.Y. C.P.L.R. 202 (McKinney 1972)).

In cases involving post-injury changes of residency by plaintiffs, courts have consistently interpreted their states' borrowing statutes not to apply where the plaintiff was a resident of the forum state at the time the cause of action accrued. *See, e .g., Miller v. Stauffer*, 581 P.2d at 346–47 (noting Idaho borrowing statute exception for one "who has been a citizen of this state" interpreted to mean when the cause of action accrues, not at the time of filing suit); *Biewend v. Biewend*, 17 Cal.2d 108, 114, 109 P.2d 701, 705 (1941) (interpreting California borrowing statute not to apply if plaintiff was California resident at time cause of action accrued); *Dugan v. Schering*, 86 N.Y.2d 857, 635 N.Y.S.2d 164, 164, 658 N.E.2d 1037, 1037 (1995) (holding "exception" to New York borrowing statute for local residents applicable only to residents of state when cause of action accrued, not to one who subsequently moved to state); *Savage v. Kramer*, 95 Or.App. 166, 768 P.2d 425, 426 (1989) (holding residence at time cause of action accrued, not when suit filed, governed whether Oregon would borrow Nevada statute of limitations); *Glynn v. Stoneville Furn. Co.*, 85 N.C.App. 166, 354 S.E.2d 552, 553 (1987) (holding plaintiff's subsequent change of residency did not render that state's borrowing statute inapplicable).

The Idaho Supreme Court, in *Miller v. Stauffer*, found "linguistic support" in that state's borrowing statute, as well as in other cases construing similar statutes, for its interpretation that plaintiff's residency in the forum state at the time the cause of action accrued would render the statute inapplicable. 581 P.2d at 347. Likewise, the Oregon appellate court in *Savage v. Kramer* noted that the plain language of its statute "linked" non-residency status to "when the cause of action has arisen" in order for the statute to apply. 768 P.2d at 426. The same linguistic support exists in the Texas borrowing statute.

The subject matter of the Texas borrowing statute is "[a]n action for damages for the death or personal injury of a citizen of this state, of the United States, or of a foreign country." TEX. CIV. PRAC. & REM. CODE ANN. § 71.031(a). Subsection (3) then provides that "for a resident of a foreign state or country," the action must be begun in this state within the time provided by the laws of the foreign state or country in which the wrongful act, neglect or default took place. *Id.* § 71.031(a)(3). The "action" in subsection (3) clearly refers to the same "action" described in (a), i.e., an action "for damages for the *death or personal injury of a citizen of this state*, of the United States or of a foreign country." *Id.* (emphasis added). We believe the language sufficiently links the residency of the "citizen" to the accrual of that citizen's cause of action to make the time of the accrual of the cause of action the critical time for determining residency.

Mindful that borrowing statutes are codified choice-of-law rules, we also find support in decisions holding that a plaintiff's residence at the time the cause of action accrued is a relevant factor under common-law choice-of-law analysis. *See e.g., Miller v. Lockett*, 75 Ill.Dec. 224, 457 N.E.2d at 17 (finding decisions recognizing plaintiff's residence as relevant in determining choice of law persuasive as to validity of borrowing statute exception in favor of resident injured outside state). It appears courts have consistently held, in determining which state's law should apply under a common-law choice-of-law analysis, that it is the plaintiff's residence at the time of the injury, not the time of filing, that is relevant. *See, e.g., Summers v. Interstate Tractor & Equip. Co.*, 466 F.2d 42, 48, n. 3 (9th Cir.1972) (noting plaintiffs' subsequent relocation to Oregon not considered in choice-of-law analysis); *Perloff v. Symmes Hosp.*, 487 F.Supp. 426, 428

(D.Mass.1980) (applying Massachusetts law although plaintiff relocated to California after accident); *Hall v. Gen. Motors Corp.*, 229 Mich.App. 580, 582 N.W.2d 866, 870 (1998) (holding North Carolina statute of "repose" for actions based upon defects in products barred suit brought in Michigan, where plaintiff did not become a resident of Michigan until after injury); *Reich v. Purcell*, 67 Cal.2d 551, 555, 63 Cal.Rptr. 31, 34, 432 P.2d 727, 730 (1967) (declining to treat survivors in wrongful death suit as residents because they moved to California after accident); *Ferren v. Gen. Motors Corp.*, 137 N.H. 423, 425, 628 A.2d 265, 267 (1993) (declining to consider post-accident move to forum state as relevant consideration in choice-of-law analysis).

As noted in *Hall v. General Motors*, the rationale underlying decisions refusing to consider a plaintiff's post-accident change of residence in a choice-of-law analysis is to prevent forum shopping by such post-injury moves. 582 N.W.2d at 870. The Supreme Court of California in *Reich v. Purcell* succinctly observed: "[I]f the choice of law were made to turn on events happening after the accident, forum shopping would be encouraged." 63 Cal.Rptr. 31, 432 P.2d at 730. Borrowing statutes, including that of Texas, reflect a legislative intent to achieve the same objective, i.e., to prevent forum shopping. To make a plaintiff's residence at the time of filing suit determinative for purposes of the Texas borrowing statute would disserve the legislative purpose underlying the statute.

We hold that Tullis's Texas residency when her cause of action accrued renders Section 71.031(a)(3) inapplicable. Tullis's action is for damages for personal injury to a Texas citizen. Therefore, the Texas borrowing statute does not apply to make the Tennessee statute of limitations applicable to bar her claim against Georgia–Pacific. Thus, the trial court abused its

discretion in dismissing Tullis's suit to the extent that it based the dismissal on section 71.031(a)(3). We sustain Tullis's first issue.

■ In her second issue, Tullis contends that the forum non conveniens statute, section 71.051, "controls" over the borrowing statute if either statute applies to the dismissal. In view of our holding that the dismissal was an abuse of discretion under the borrowing statute, it is unnecessary to reach Tullis's second issue. However, we note that section 71.031(a)(3) is simply not a forum non conveniens statute, nor are its requirements jurisdictional. *See Dubai*, 12 S.W.3d at 76–77 (overruling *Mingus v. Wadley*, 115 Tex. 551, 285 S.W. 1084 (1926), to the extent that case characterized a plaintiff's failure to satisfy a prerequisite listed in section 71.031 as jurisdictional). As previously discussed, it is a codified choice-of-law rule for determining which state's statute of limitations applies for out-of-state injuries. Applicability of a statute of limitations to bar a plaintiff's claim is an affirmative defense. *See* Tex. R. Civ. P. 94. A defendant seeking a dismissal based on an affirmative defense such as a statute of limitations must first file a special exception or a motion for summary judgment giving the plaintiff an opportunity to respond. *See, e.g., Hunter v. Johnson*, 25 S.W.3d 247, 248–49 (Tex. App.—El Paso 2000, no pet.) (holding motion to dismiss not proper vehicle to raise statute of limitations); *cf., Toubaniaris v. American Bureau of Shipping*, 981 S.W.2d 858, 860–61 (Tex.App.—Houston [1st Dist.] 1998, pet. denied) (addressing but not deciding whether motion to dismiss based on prior version of section 71.031 was appropriate). Therefore, the trial court could not have granted a dismissal of this suit based on the borrowing statute.

## VI. Forum Non Conveniens

As to a plaintiff who is a legal resident of the United States, the 1997 version of section 71.051 provides that a claim or action may be stayed or dismissed under the doctrine of forum non conveniens if the party seeking the stay or dismissal proves, by a preponderance of the evidence, that: (1) an alternate forum exists in which the claim or action may be tried; (2) the alternate forum provides an adequate remedy; (3) maintenance of the claim or action in the courts of this state would work a substantial injustice to the moving party; (4) the alternate forum, as a result of the submission of the parties or otherwise, can exercise jurisdiction over all the defendants properly joined to the plaintiff's claim; (5) the balance of the private interests of the parties and the public interest of the state predominate in favor of the claim or action being brought in the alternate forum; and (6) the stay or dismissal would not result in unreasonable duplication or proliferation of litigation. *See* Tex. Civ. Prac. & Rem. Code Ann. § 71.051(b).

A plaintiff's claim may not, however, be dismissed under section 71.051(b) if the plaintiff "is a legal resident of this state." *Id.* § 71.051(e). A "legal resident" is defined by the statute as a person "who intends the specified political subdivision to be his permanent residence and who intends to return to the specified political subdivision despite temporary residence elsewhere or despite temporary absences, without regard to the individual's country of citizenship or national origin." *Id.* § 71.051(h)(1).

### 1. Plaintiff's Residency

The forum non conveniens statute is worded differently from the borrowing statute and specifically provides that "[t]he court may not stay or dismiss a plaintiff's claim [based on forum non conveniens] if the plaintiff *is* a resident of this state." Tex. Civ. Prac. & Rem. Code Ann. § 71.051(e) (emphasis added). Tullis contends this statute, like the borrowing statute, should be construed to make the date the cause of action accrued determinative of whether the court may stay or dismiss a suit based on forum non conveniens. Under her interpretation, Tullis's suit is not subject to dismissal because she was a resident of this State when her cause of action accrued.

Tullis makes the same argument with respect to the forum non conveniens statute as she did with respect to the borrowing statute, arguing that the trial court's finding that she "is a resident of Colorado Springs, Colorado" does not support the order of dismissal based on forum non conveniens.

■ As originally passed by the Senate, the amendments to section 71.051 contained in Senate Bill 220 included a proposed section requiring the court "to determine whether a claim is filed by a resident or nonresident of this state *from facts existing at the time the claim accrued.*"[9] That provision was absent from the House Civil Practices Committee substitute and as finally enacted.[10] The dele-

**9.** Senate Research Comm., Bill Analysis, Tex. S.B. 220, 75th Leg., R.S. (Feb. 19, 1997) (emphasis added).

**10.** Act of Feb. 23, 1993, 73rd Leg., R.S., ch. 4, § 1, 1993 Tex. Gen. Laws 10, 10, *amended by* Act of May 24, 1995, 74th Leg., R.S ., ch. 567, § 1, 1995 Tex. Gen. Laws 3363, 3363, *amended by* Act of May 24, 1997, 75th Leg., R.S., ch. 424, § 1, 1997 Tex. Gen. Laws 1680, 1680 (current version at Tex. Civ. Prac. & Rem. Code Ann. § 71.051); House Comm. On Civil Practices, Bill Analysis, 75TH Leg., R.S., Tex. C.S.S.B. 220 (Committee Report) (Substituted) (May 20,1997).

tion of a provision in a pending bill indicates a legislative intent to reject the proposed provision. *See Texas Water Comm'n v. Brushy Creek Mun. Util. Dist.*, 917 S.W.2d 19, 23 (Tex.1996); *Trans. Ins. Co. v. Maksyn*, 580 S.W.2d 334, 337 (Tex.1979). It is unclear from the deletion in this instance, however, whether the legislature meant that residency of a plaintiff could be determined either from facts existing at the time the cause of action accrued or at the time of filing, or whether it meant to make nonresidency determinable exclusively by facts existing at the time of filing.

In contrast to the language at issue in section 71.051, we also note that section 71.052, passed as part of the same bill and dealing specifically with harm caused by asbestos fiber exposure, expressly applies only to a plaintiff who "was not a resident of this state at the time the claim arose." TEX. CIV. PRAC. & REM. CODE ANN. § 71.052(a)(1). Arguably, the legislature could have used the same language in the forum non conveniens statute if it had desired to limit its application only to plaintiffs who were not residents of this state at the time their claims arose.

Whatever the legislature may have meant to say, we need not embark upon an analysis of legislative intent regarding the critical time for determining residency of a plaintiff under Section 71.051(e). Even assuming Georgia–Pacific sufficiently established that the forum non conveniens statute is applicable because Tullis "is" not a legal resident of this state but, rather, is a resident of Colorado, as found by the trial court, Georgia–Pacific failed to carry its burden to prove the substantive requirements for dismissal under the statute.

## 2. *Forum Non Conveniens Analysis*

■ Tullis's third issue challenges the legal and factual sufficiency of evidence to support the trial court's findings of fact. Her fifth issue asserts that the dismissal was an abuse of the trial court's discretion because Georgia–Pacific failed to meet its burden of proof on the forum non conveniens grounds. We consider these issues together. The factors to be considered in applying the doctrine of forum non conveniens are set forth in section 71.051(b) and are similar to those applied under the common law in Texas, which are adopted from *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 507–08, 67 S.Ct. 839, 842–43, 91 L.Ed. 1055, (1947). *See* TEX. CIV. PRAC. & REM. CODE ANN. § 71.051(b); *Baker*, 985 S.W.2d at 277 n. 2.[11] It was Georgia–Pacific's burden to prove by a preponderance of evidence *each* of the six factors listed under section 71.051(b).

### a. *Available Forum*

Under the common law, the defendant has the initial burden to determine that an available, alternate forum exists. *See Sarieddine v. Moussa*, 820 S.W.2d 837, 841 (Tex.App.—Dallas 1991, writ denied). A "foreign forum is available when the entire case and all the parties can come within the jurisdiction of that forum." *Id.* (quoting *Quintero v. Klaveness Ship Lines*, 914 F.2d 717, 727 (5th Cir.1990), *cert. denied*, 499 U.S. 925, 111 S.Ct. 1322, 113 L.Ed.2d 255 (1991)). Subsection (1) of section 71.051(b) requires that an "alternate forum exist in which the claim or action may be tried." TEX. CIV. PRAC. & REM. CODE ANN. § 71.051(b)(1). Subsection (4) requires that the alternate forum, "as a result of the submission of the parties or otherwise, can exercise jurisdiction over all of the defendants · properly joined." TEX. CIV. PRAC. & REM. CODE ANN. § 71.051(b)(4).

---

11. *See* Sherz, 46 BAYLOR L. REV. at 129.

Georgia–Pacific contends that Tennessee is an alternate "available" forum, as required by sections 71.051(b)(1) and (4).

Georgia–Pacific points out that the trial court found it is a corporation with a registered agent and principal place of business in Tennessee, and also found the driver, Reid, is a resident of Tennessee. Thus, Georgia–Pacific argues, all of the parties are amenable to process in Tennessee and come within the jurisdiction of that court. The trial court's findings, based solely on the allegations of Tullis's original petition, are in error.

Tullis alleged that Georgia–Pacific has a registered agent and a regional office in *Texas*, not Tennessee. Moreover, Tullis alleged only that Reid was a resident of Tennessee *at the time of the accident.* Reid has never been found for service. There is no evidence of Reid's current residency in the record. Georgia–Pacific thus produced no evidence that Tennessee is an "available" forum in which all parties are amenable to service and subject to jurisdiction.

### b. Adequate Remedy

Georgia–Pacific next argues Tullis had the burden of proof to establish that Tennessee is not an "adequate" forum. However, Georgia–Pacific cites pre–1997 law for this proposition. Senate Bill 220 shifted the burden of proof from the plaintiff, where it had been placed under the common law and by statute prior to 1997,[12] to the defendant to establish by a preponderance of the evidence that "the alternate forum provides an adequate remedy." TEX. CIV. PRAC. & REM. CODE ANN. § 71.051(b)(2). An alternate forum is "adequate" when the parties will not be deprived of all remedies or treated unfairly. *See Sarieddine,* 820 S.W.2d at 837 (cor-

rectly defining "adequate," but incorrectly cited by Georgia–Pacific for pre–1997 burden of proof). Georgia–Pacific has *not* proved that Tullis would not be deprived of a remedy in Tennessee. To the contrary, it is undisputed that Tullis has no remedy at all in Tennessee because her claim would be barred in that state by the Tennessee one-year statute of limitations.

Georgia–Pacific says this fact should be given no weight, citing *Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 247, 102 S.Ct. 252, 261, 70 L.Ed.2d 419 (1981). Georgia–Pacific correctly notes that, in *Piper,* the United States Supreme Court only stated that the possibility of a change in substantive law should not be given "substantial weight." *Id.* However, the *Piper* Court also stated that "dismissal would not be appropriate where the alternative forum does not permit litigation of the subject matter of the dispute." *Id.* at 255 n. 22, 102 S.Ct. at 265 n. 22. Georgia–Pacific has offered no evidence that Tennessee courts would permit litigation of the subject matter of Tullis's claim, nor has Georgia–Pacific offered to waive its right to assert the Tennessee statute-of-limitations defense. *See Direct Color Servs., Inc. v. Eastman Kodak Co.,* 929 S.W.2d 558, 565 (Tex. App.—Tyler 1996, writ denied) (holding alternate forum was "adequate" where defendant stipulated against assertion of limitations as condition of dismissal). Georgia–Pacific has wholly failed to meet its burden with respect to the requirement that an alternative forum afford an "adequate remedy." *See Mercier v. Sheraton Int'l., Inc.,* 935 F.2d 419, 425 (1st Cir.1991) (holding dismissal was abuse of discretion where defendant's evidence failed to address limitations bar to plaintiff's claim in alternate forum).

---

12. Act of Feb. 23, 1993, 73rd Leg., R.S., ch. 4, § 1, 1993 Tex. Gen. Laws 10, 10, *amended by* Act of May 24, 1995, 74th Leg., R.S ., ch. 567, § 1, 1995 Tex. Gen. Laws 3363, 3363.

### c. Substantial Injustice

Tullis submitted records, unobjected to by Georgia–Pacific, as evidence that Georgia–Pacific is a Georgia corporation authorized to do business in Texas and with a registered agent in Texas. Georgia–Pacific has not shown that the driver, Reid, is still in Tennessee, nor has it identified any other material witness located in Tennessee. Although it points out that the site of the collision is located in Tennessee, we do not find this fact persuasive in light of the availability of photography, videotape, and accident reconstruction technology. As a Georgia corporation, Georgia–Pacific has offered no evidence that requiring it to litigate in Texas, as opposed to Tennessee, would cause a substantial injustice resulting in detrimental harm to its ability to mount a viable defense.

### d. Balance of Interests

Subsection (5) of section 71.051 requires the defendant to prove that the "balance of the private interests of the parties and the public interest of the state predominate in favor of the claim or action being brought in the alternate forum." TEX. CIV. PRAC. & REM. CODE ANN. § 71.051(b)(5). In *Gilbert,* the private interest factors to be considered were listed as: the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling witnesses; cost of obtaining attendance of willing witnesses; possibility of view of the premises, if appropriate; and "all other practical problems that make trial of a case easy, expeditious and inexpensive." 330 U.S. 501, 508, 67 S.Ct. 839, 843, 91 L.Ed. 1055 (1947).

 Tullis desires the suit to be in Texas. A plaintiff has an interest in selecting a forum in which to bring his or her suit. *See A.P. Keller Dev., Inc. v. One Jackson Place, Ltd.,* 890 S.W.2d 502, 505 (Tex.App.—El Paso 1994, no writ). The only defendant served, Georgia–Pacific, does business in Texas. Because Reid has not been served and limitations has already run as to him, his absence from the suit is not a factor. Additionally, Tullis submitted evidence that she resided in Texas at the time of the accident, she was a resident of Texas at the time of her injuries, and that she received medical treatment for her injuries in Texas. Her other treating doctors are in Colorado. The remaining private factors have been discussed previously. Texas would at least have an interest in a suit involving injuries to one of its own residents and Georgia–Pacific has offered no evidence that Tennessee has an interest in a suit between a Colorado resident and a Georgia corporation. Georgia–Pacific has not shown that the public and private interests strongly predominate in favor of dismissal.

 Forum non conveniens is rooted "in considerations of fundamental fairness and sensible and effective judicial administration." *Alfaro,* 786 S.W.2d at 703. The doctrine should be applied "with caution, exceptionally, and only for good reasons." *Van Winkle–Hooker Co. v. Rice,* 448 S.W.2d 824, 827 (Tex.Civ.App.—Dallas 1969, no writ). Under the common law, Texas courts held that dismissal was appropriate when a trial court determined that, for the convenience of the litigants and witnesses and in the interest of justice, the action should be instituted in another forum. *See id.* at 826. However, "unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." *Sarieddine,* 820 S.W.2d at 840 (quoting *Gilbert,* 330 U.S. at 508, 67 S.Ct. at 843).

Not only has Georgia–Pacific failed to demonstrate that the balance is "strongly" in favor of dismissal, but there is a total absence of evidence produced by Georgia–Pacific to support the factors required by

section 71.051(b). A trial court abuses its discretion when there is no evidence to support its ruling. *See Loftin v. Martin,* 776 S.W.2d 145, 148 (Tex.1989); *D.N.S. v. Schattman,* 937 S.W.2d 151, 155 (Tex. App.—Fort Worth 1997, orig. proceeding); *Van Winkle–Hooker Co. v. Rice,* 448 S.W.2d at 828 (holding dismissal based on forum non conveniens abuse of discretion in absence of evidence other than plaintiff's non-residence in Texas). We sustain Tullis's third and fifth issues and hold that the trial court abused its discretion in granting Georgia–Pacific's motion to dismiss based on forum non conveniens.[13]

### VII. CONCLUSION

The order of the trial court is reversed and remanded with instructions that the order of dismissal be set aside and the cause of action be reinstated on the court's docket for further proceedings consistent with this opinion.

13. Because we hold that the borrowing statute does not apply and the trial court's dismissal was an abuse of discretion as not supported by evidence satisfying five of the six enumerated factors in section 71.051(b), it is unnecessary to consider Tullis's fourth issue regarding whether the trial court should have conditioned the dismissal on an agreement not to assert the Tennessee statute of limitations.